678 So.2d 59 (1996)
STATE of Louisiana, Plaintiff-Appellee,
v.
Cornell COOPER, Defendant-Appellant.
No. 96-119.
Court of Appeal of Louisiana, Third Circuit.
July 17, 1996.
*61 Jerold Edward Knoll, Michael Francis Kelly, Marksville, for State of Louisiana.
Laurie A. White, New Orleans, for Cornell Cooper.
Before SAUNDERS, SULLIVAN and GREMILLION, JJ.
GREMILLION, Judge.
On February 25, 1992, defendant, Cornell Cooper, was charged by bill of information with one count of armed robbery, a violation of La.R.S. 14:64. On that same day defendant was arraigned and pled not guilty. On May 12, 1992, defendant was tried by a jury and found guilty of the responsive verdict of simple robbery. On October 20, 1992, defendant was adjudicated a fourth felony habitual offender, and was sentenced to fifty years at hard labor on November 3, 1992. Defendant now appeals his conviction and sentence.

FACTS
On January 24, 1992, in Avoyelles Parish, defendant knocked at the door of Emma Barr's residence and told her he was a police officer with bad news about her family. When Barr opened the door, defendant pushed his way into the house and knocked her to the floor. Barr sustained minor cuts to her right elbow. Defendant demanded her purse, and she gave him her billfold. He took ten dollars and threw out her driver's license and other cards onto the floor. Banraised her hand and felt a sharp object against her side. Defendant told her not to move, and then he threw the wallet down and fled. Barr called the police and gave a report. *62 The next morning, she picked defendant out of a photographic lineup.

SUFFICIENCY OF EVIDENCE
By his first assignment of error, defendant contends the evidence presented by the state was insufficient to support the verdict. When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, rehearing denied, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); State ex rel. Graffagnino v. King, 436 So.2d 559 (La.1983); State v. Duncan, 420 So.2d 1105 (La.1982); State v. Moody, 393 So.2d 1212 (La.1981). It is the role of the factfinder to weigh the respective credibility of the witness, and therefore, the appellate court should not second guess the credibility determination of the trier of fact beyond the sufficiency evaluations under the Jackson standard of review. See State ex rel. Graffagnino, 436 So.2d 559, citing State v. Richardson, 425 So.2d 1228 (La.1983).
In order for the state to obtain a conviction, it must prove the elements of the crime beyond a reasonable doubt. Defendant was convicted of simple robbery, a violation of La.R.S. 14:65, which states:
A. Simple robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, but not armed with a dangerous weapon.
In this instance defendant contests only the positive identification made by Barr. While defendant concedes that positive identification by one witness is sufficient to support a conviction, he alleges that Barr's identification testimony was not credible because it was unreliable and her description of the defendant scant.
The state's first witness was Barr, who at the time of the attack was 80 years old. She testified that she lived alone in her home in Simmesport, and at approximately 11:20 p.m. on January 24, 1992, she heard a knock at the door. She asked who it was, and the individual identified himself as a policeman, saying he had bad news for her. Barr turned on the light in her bedroom, unlocked the two locks on her door and opened the door slightly. She saw the individual was not in uniform so she tried to close the door, but the intruder pushed the door open. Barr was pushed against a wall and received three bruises. When she tried to get up, she lost her balance and fell against the bed, bruising her leg. Defendant told Barr to turn on the kitchen light which she did. He then told her to turn it off and then on again, which she did. Defendant told her to give him her purse and she went to her desk and handed him her leather billfold. He opened it and took the cash and change which was less than ten dollars. He threw her driver's license and Medicare card on the floor. She raised her hand and felt something like a rough file or knife. The defendant then left her home and Barr called the police. Barr said the knife was left on her television inside her living room. She recognized it as a knife she used when gardening and which she had left on a ledge by her carport.
Barr immediately called the police who arrived within minutes and took her report and a description of the robber. The next day, Officer Clint Lemoine and two other officers showed her a lineup of photographs from which she picked the photograph of the defendant. She said she did not know defendant before the incident and the officer told her that his name was Cornell Cooper. Barr identified defendant in court as the individual who robbed her.
On his case-in-chief, defendant called his girlfriend, Othelia Allen, with whom he had been living for about one year. Allen testified that Cooper was at home between the hours of nine and twelve on the night of the robbery. She said she and defendant were arguing that night between eleven and twelve. She said he left the house about eleven-thirty or midnight. Allen said defendant could have left after eleven-thirty but not before, yet she could not explain why she knew it was not before eleven-thirty. Allen *63 said the Arsenio Hall show had been on a while and she thought it was around eleven-thirty.
Betty Vincent, the mother of defendant, testified she was at home on the night of the robbery and that her house was located next to the house where defendant and Allen lived. She said defendant left her house some time after nine that evening and went to his house. She testified her son told her he was not involved in the robbery.
Officer James Dibble was called by the state in rebuttal. He testified he responded to the call from Barr. After concluding his interview with her, he went to the Fast Break Food Store on Highway One to meet with Lt. Gary Winfrey. Dibble stated he saw defendant in the store.
A determination of the weight of evidence presented is a question of fact. The resolution of a matter where conflicting testimony exists requires a determination of the credibility of the witnesses and is a matter of weight of the evidence and not sufficiency. Tibbs v. Florida, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). Such a determination rests solely with the trier of fact who may accept or reject, in whole or in part, the testimony of any witness. State v. Nolan, 503 So.2d 1186 (La.App. 3 Cir.), writ denied, 507 So.2d 226 (La.1987).
A factfinder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Jackson, 443 U.S. 307, 99 S.Ct. 2781. Where rational triers of fact could disagree as to the interpretation of the evidence, the rational trier's view of all evidence most favorable to the prosecution must be adopted on review. Only irrational decisions to convict by the trier of fact will be overturned. State v. Mussall, 523 So.2d 1305 (La.1978).
Taking all of the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the elements of the crime, including identity, were proven beyond a reasonable doubt. The victim chose the defendant out of a photographic lineup with no hesitation, and none of the defense witnesses provided an absolute alibi as to the defendant's whereabouts. This assignment of error lacks merit.

INEFFECTIVE ASSISTANCE OF COUNSEL
Defendant presents several claims that his counsel was ineffective in assisting him at trial. Although a claim for ineffective assistance of counsel is properly raised in an application for post-conviction relief, where the record contains evidence sufficient to decide the issue, and the issue is raised on appeal, the issue should be considered. State v. Burkhalter, 428 So.2d 449 (La.1983).
The right of a defendant in a criminal proceeding to the effective assistance of counsel is constitutionally mandated by the sixth amendment of the United States Constitution. In order to prove that counsel was ineffective, the defendant must meet the two-prong test enunciated by the Supreme Court. The defendant must show that his attorney's performance was deficient and that this deficiency prejudiced the outcome of the trial. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Brooks, 505 So.2d 714 (La. 1987), cert. denied, 484 U.S. 947, 108 S.Ct. 337, 98 L.Ed.2d 363 (1987). To establish this claim, a defendant must demonstrate that his trial counsel failed to meet the level of competency normally demanded of attorneys in criminal cases. State ex rel. Graffagnino, 436 So.2d 559; State v. Fickes, 497 So.2d 392 (La.App. 3 Cir.1986), writ denied, 515 So.2d 1105 (La.1987).
In considering allegations of ineffectiveness, defense attorneys are entitled to a strong presumption that their conduct fell within the broad range of reasonable professional assistance. The Supreme Court has held that the benchmark for judging a charge of ineffectiveness is whether the attorney's conduct so undermined the proper functioning of the adversarial process that the trial cannot be considered to have produced a just result. United States v. Cronic, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984); Strickland, 466 U.S. 668, 104 S.Ct. 2052.

*64 ASSIGNMENT OF ERROR NUMBER 2
By his second assignment of error, defendant contends his trial counsel's performance was deficient because he failed to effectively cross-examine the victim and Officer Dibble. In Officer Dibble's police report, he states the victim told him that she would not be able to recognize the defendant if she saw him again. The attorney's failure to raise this fact is insignificant in light of the victim's later ability to identify the defendant from a photo lineup and at trial. Defense counsel thoroughly questioned Barr concerning how many lights were on, whether she wore glasses and if she had them on during the robbery, and how long she was with the robber. He also questioned her identification of defendant from a photographic lineup. Counsel's failure to raise the victim's comment in the police report did not constitute deficient performance. Defendant has failed to demonstrate any probability that the statement would have changed the result at trial. Thus, this assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER 3
By this assignment of error, defendant contends his trial counsel was ineffective by failing to object to the designation of Officer Dibble as case agent under La.Code Evid. art. 615(A)(2).
At the beginning of trial, all witnesses were placed under the rule of sequestration at defense counsel's request. As provided by law, the state designated Officer Dibble as case agent. Defendant notes that Dibble sat through the entire trial and was then called as a rebuttal witness. Defendant avers that his trial counsel was deficient in failing to object.
La.Code Evid. art. 615(A) provides, in part:
On its own motion the court may, and on request of a party the court shall, order that the witnesses be excluded from the courtroom or from a place where they can see or hear the proceedings, and refrain from discussing the facts of the case with anyone other than counsel in the case. In the interests of justice, the court may exempt any witness from its order of exclusion. However, this Article does not authorize exclusion of:
* * * * * *
(2) A single officer or single employee of a party which is not a natural person designated as its representative or case agent by its attorney;
The comments following La.Code Evid. art. 615 state:
(d) [A] potentially prejudicial situation is presented, of course, in criminal cases when a law enforcement officer who is designated as the state's representative is expected also to testify as a fact witness. In such a situation the court should take appropriate measures to minimize the possibility of prejudice, such as permitting the case agent to be designated as the state's representative only if he testifies prior to all other fact witnesses.
We note two cases concerning the situation described in comment (d) of La.Code Evid. art. 615: State v. Lopez, 562 So.2d 1064 (La.App. 1 Cir.1990); and State v. Ondek, 584 So.2d 282 (La.App. 1 Cir.), writ denied, 586 So.2d 539 (La.1991). In Lopez, the commander of a narcotics task force, who was also the principal witness against the defendant, was designated as the state's case agent and allowed to remain in the courtroom while other fact witnesses testified. This was determined to violate La.Code Evid. art. 615 since the case agent did not testify before the other fact witnesses, and the conviction was reversed and remanded for new trial. However, in Ondek, allowing the case agent to remain in the courtroom while eight witnesses testified before he did was not a violation of La.Code Evid. art. 615 because the case agent was the first witness to testify concerning the Miranda rights given to the defendant; the defendant's statements and actions after arrest; and the chain of custody of a taped statement. Furthermore, the case agent in Ondek did not benefit unfairly since he was aware of the defendant's theory of defense based upon his participation in pretrial hearings.
In the case sub judice, Officer Dibble was called as the last witness after having heard *65 the testimony of the victim, defendant's girlfriend, and defendant's mother. Dibble essentially testified that he was called to the victim's residence and arrived at approximately 11:25 p.m., which is corroborated in his police report. After taking the victim's statement, Dibble went to the Fast Break Food Store on Highway One to meet Lt. Winfrey of the Avoyelles Parish Sheriff's Office. Dibble stated that he saw defendant in the store at about 11:45 pm. It is noted that Officer Dibble's "Offense Report" was filed in the record of these proceedings. His report indicates that he filled it out on January 25, 1992, at 12:10 a.m., forty-five minutes after he arrived at the victim's residence.
Trial counsel for defendant in the present case did not object to Officer Dibble testifying at trial. This issue is being raised on appeal as an ineffective assistance of counsel claim. The first prong of the Strickland test is: did trial counsel err by failing to object? We find that trial counsel did err in this instance. The testimony of Officer Dibble was introduced to place defendant near the scene of the crime shortly after the crime was committed. Testimony that defendant was at the Fast Break Food Store at 11:45 p.m. did not necessarily rebut the testimony of the alibi witnesses. The testimony was, therefore, direct evidence which should have been introduced in the state's case-in-chief. In that regard, Officer Dibble would have testified before defendant's alibi witnesses. However, defendant is not automatically entitled to relief if his trial counsel errs; defendant must also establish that he was prejudiced by this error. In this context, prejudice means the failure to object influenced the outcome of the trial and rendered the verdict unreliable.
The specific prejudice alleged by defendant on appeal concerns the time frame of when Officer Dibble completed his incident report, when he allegedly saw the defendant in the store, and when defendant's girlfriend testified he left their home. In other words, defendant alleges that after Officer Dibble heard the alibi testimony, he either created or adjusted his testimony concerning the time and location that he saw defendant on the night of the robbery so as to imply that defendant was in the area shortly after the robbery. As we stated earlier, Officer Dibble's testimony did not rebut the testimony of the alibi witnesses since he did not contradict defendant's girlfriend's claim that the defendant left the house after 11:30 p.m. Defendant's mother simply testified he left her house at 9:00 p.m.
At most, Officer Dibble's testimony was circumstantial and tangential to the issue of defendant's guilt. If believed, it simply proves defendant was in the area shortly after the robbery. Considering the eyewitness testimony of the victim, which we have concluded was sufficient to support the verdict of guilty of simple robbery, the admission of Officer Dibble's testimony was harmless error. Therefore, this assignment of error is without merit and is rejected.

ASSIGNMENT OF ERROR NUMBER 4
By his fourth assignment of error, defendant contends his trial counsel was ineffective for failing to object to the jury instruction on reasonable doubt. The jury instruction follows:
The defendant is presumed to be innocent until each element of the crime necessary to constitute his guilt is proven beyond a reasonable doubt. In considering the evidence, you must give the defendant the benefit of every reasonable doubt arising out of the evidence or out of the lack of evidence. If you are not convinced of the guilt of the defendant beyond a reasonable doubt, you must find him not guilty. While the state must prove guilt beyond a reasonable doubt it does not have to prove guilt beyond all possible doubt. Reasonable doubt [sic] based on reason and common sense and is present when after you have carefully considered all of the evidence you cannot say that you are firmly convinced of the truth of the charge.
Since the ruling in the case of Cage v. Louisiana, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990), the particular words used in a reasonable doubt jury instruction have been examined closely by the courts. However, in the more recent case of Victor v. Nebraska, 511 U.S. 1, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994), the United States Supreme Court seemingly changed its position *66 concerning review of reasonable doubt jury instructions by holding that the proper inquiry is not whether any particular word used in the instructions could have been applied in an unconstitutional manner, but whether there is a reasonable likelihood that the jury actually did apply the instruction in an unconstitutional manner. In Victor, the Court, considering the whole instruction rather than isolating individual terms, found the jury instructions constitutionally valid even though they contained terms similar to those found unconstitutional in Cage.
The ruling of Victor has been adopted by the Louisiana Supreme Court in State v. Smith, 91-749 (La. 5/23/94), 637 So.2d 398, cert. denied, ___ U.S. ___, 115 S.Ct. 641, 130 L.Ed.2d 546 (1994). In the more recent case of State v. Kelly, 92-2446 (La.App. 4 Cir. 7/8/94), 639 So.2d 888, writ denied, 94-2087 (La. 1/6/95), 648 So.2d 921, the fourth circuit reaffirmed that the standard to be used when considering an ambiguous or allegedly improper jury instruction on reasonable doubt is whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the constitution. If the reviewing court can find that there is no reasonable likelihood that the jurors understood the instruction to allow a conviction based upon proof insufficient to meet the "beyond a reasonable doubt" standard of In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), then the conviction and sentence will stand.
The jury instruction in the present case does not contain any of the words criticized in the Cage opinion; therefore, defendant's reliance solely upon this case is misplaced. Likewise, there is no evidence that the jury applied the instructions in an unconstitutional manner as suggested in Victor.
When reviewing the reasonable doubt instruction and the jury charge as a whole, defendant was not convicted on evidence that did not meet the required "beyond a reasonable doubt" standard. There was nothing for defendant's trial counsel to object to, and therefore, his failure to object was not an error. Accordingly, this assignment of error is rejected.

ASSIGNMENT OF ERROR NUMBER 5
By his fifth assignment of error, defendant contends his trial counsel was ineffective for failing to object to the trial court informing the jury of the penalties for the charged offense of armed robbery and the lesser responsive verdicts. The defendant contends that the instructions would tend to encourage a conviction.
As stated by the Louisiana Supreme Court in State v. Blackwell, 298 So.2d 798, 804 (La.1974), cert. denied, 420 U.S. 976, 95 S.Ct. 1401, 43 L.Ed.2d 656 (1975), "[o]ur law does not require that the judge charge the jury on penalty, nor, however, does it prohibit such a charge." The court ruled that it was within the trial judge's discretion whether to allow the jury to be informed of the penalty either during closing arguments or the jury instructions. The later case of State v. Jackson, 450 So.2d 621, 633 (La. 1984), summarized the current status of the law:
When the penalty imposed by the statute is a mandatory one, the trial judge must inform the jury of the penalty on request of the defendant and must permit the defense to argue the penalty to the jury. State v. Hooks, 421 So.2d 880 (La. 1982); State v. Washington, 367 So.2d 4 (La.1978). In instances other than when a mandatory legislative penalty with no judicial discretion as to its imposition is required following verdict, the decision to permit or deny an instruction or argument on an offense's penalty is within the discretion of the trial judge. State v. Williams, 420 So.2d 1116 (La.1982); State v. Dawson, 392 So.2d 445 (La.1980); State v. Carthan, 377 So.2d 308 (La.1979); State v. Blackwell, 298 So.2d 798 (La.1974) (on rehearing), cert. denied, 420 U.S. 976, 95 S.Ct. 1401, 43 L.Ed.2d 656 (1975).
(Emphasis added).
Therefore, the decision to include the penalties for the charged offense and all lesser included offenses in the jury instructions rested within the exercise of the trial judge's discretion. In Blackwell and other cases reviewing the necessity of informing a jury of the penalty for a conviction, those cases which found that it should be mandatory *67 have claimed that the penalty is part of "the law" of which the jury must be informed. In his jury instruction in the present case, the trial judge stated, "[s]entencing is not the function of the jury, it is the duty and responsibility of the Court. However, in order to insure that you are fully advised of the law, I will inform you as to the penalty provided by this statute."
According to State v. Cage, 583 So.2d 1125 (La.1991), cert. denied, ___ U.S. 874, 112 S.Ct. 211, 116 L.Ed.2d 170 (1991), if the jury instruction on the penalties is considered an error, then it is a trial error subject to the harmless error analysis; that is, did the error contribute to the jury's verdict of guilty. We find that the inclusion of the penalties for all of the responsive verdicts was not a matter that induced the jury to convict defendant in the absence of other evidence sufficiently proving his guilt beyond a reasonable doubt. Therefore, this assignment of error is also rejected for lack of merit.

ASSIGNMENT OF ERROR NUMBER 6
By his sixth assignment of error, defendant contends the evidence presented at his habitual offender hearing was insufficient to support his adjudication as a fourth habitual offender. The Louisiana Supreme Court clarified the burden of proof for the state and the defendant at habitual offender proceedings in State v. Shelton, 621 So.2d 769, 779 (La.1993):
If the defendant denies the allegations of the bill of information, the burden is on the State to prove the existence of the prior guilty pleas and that defendant was represented by counsel when they were taken. If the State meets this burden, the defendant has the burden to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. If the defendant is able to do this, then the burden of proving the constitutionality of the plea shifts to the State. The State will meet its burden of proof if it introduces a "perfect" transcript of the taking of the guilty plea, one which reflects a colloquy between judge and defendant wherein the defendant was informed of and specifically waived his right to trial by jury, his privilege against self incrimination, and his right to confront his accusers. If the State introduces anything less than a "perfect" transcript, for example, a guilty plea form, a minute entry, an "imperfect" transcript, or any combination thereof, the judge then must weigh the evidence submitted by the defendant and by the State to determine whether the State has met its burden of proving that defendant's prior guilty plea was informed and voluntary, and made with an articulated waiver of the three Boykin rights. We note that this new procedure will not only give appropriate significance to the presumption of regularity which attaches to judgments of conviction which have become final, but will also provide an advantage to defendants who were previously under [State v.] Lewis [, 367 So.2d 1155] [(La.1979)] unable to introduce any extra-record evidence and whose guilty pleas were heretofore under [State v.] Tucker [405 So.2d 506] [La.1981] found constitutionally valid by mere proof of a minute entry and a guilty plea form.
(Footnotes omitted).
At defendant's habitual offender hearing, the state introduced the bills of information and the court minutes of the prior convictions of defendant indicating defendant was represented by counsel at these proceedings. Defendant did not present any affirmative evidence of a procedural irregularity or infringement of his rights at any of the prior guilty plea proceedings. Therefore, under Shelton the state met its burden of proof.
Defendant objected at the hearing to some of the prior convictions being more than five years before the simple robbery conviction. However, the trial court overruled the objection finding that the five year cleansing period was computed from the completion of the prior sentence to the commission of the subsequent offense. Also, defendant complained that one of his prior convictions did not occur in the proper sequence for use in a habitual offender adjudication. Defendant is correct in his assertion; however, the state proved five prior felony convictions *68 when it only needed to prove three. Even if defendant's fourth felony conviction, for forgery, is not considered a prior conviction, the remaining four convictions are more than adequate to support the fourth habitual offender adjudication. In its habitual offender bill of information and at the hearing, the state established that defendant had been convicted of the following five felony convictions before the present simple robbery conviction: (1) simple burglary committed the first week of June, 1979, convicted July 19, 1979, and sentenced to eighteen months hard labor, suspended and placed on eighteen month probation; (2) accessory after the fact to armed robbery committed January 16, 1983, convicted September 15, 1983, and sentenced to three years hard labor; (3) distribution of marijuana2 counts committed June 8 and 26, 1988, convicted April 11, 1989, and sentenced to five years hard labor with three and one-half years suspended; (4) forgery committed March 20, 1989, convicted July 18, 1989, and sentenced to two years hard labor; and (5) theft over $500 committed April 23, 1989, convicted July 18, 1989, and sentenced to two years hard labor to run concurrent with the forgery sentence. Defendant committed the instant offense on January 24, 1992, and was convicted on May 12, 1992. As seen by the dates of these prior convictions, the five year cleansing period set forth in La.R.S. 15:529.1(C) never lapsed between the completion of any of defendant's prior sentences and commission of the subsequent offenses. The only possible exception is the forgery offense which was committed before the conviction of the distribution of marijuana offenses; however, excluding this one conviction will not affect the fourth offender adjudication since the state sufficiently proved four prior convictions before the instant offense. Therefore, this assignment of error does not present reversible error and is without merit.
There exists, however, one other problem with the prior convictions. For defendant's first and second convictions his court appointed counsel was Michael J. Johnson, who was the presiding judge at the present trial and habitual offender adjudication. This may appear to be grounds for recusal, but defendant did not file a motion to recuse in the trial court, and on appeal, his appellate counsel has not complained about the presiding judge formerly being one of defendant's court appointed attorneys. In State v. Wille, 595 So.2d 1149 (La.1992), cert. denied, 506 U.S. 880, 113 S.Ct. 231, 121 L.Ed.2d 167 (1992), the Louisiana Supreme Court recognized that a defendant may waive his right to demand the recusal of a trial judge. In the present case, the trial judge's ruling that defendant was a fourth habitual offender was based upon the public records of the district court and not upon any confidential information he acquired as defendant's previous counsel. Therefore, the trial judge was not subject to recusal. See State v. Bennett, 357 So.2d 1136 (La.1978), where it was held that calling a defendant's previous counsel to identify him in subsequent habitual offender adjudication was not a violation of attorney-client privilege since the fact of prior representation was a matter of public record.

SENTENCING
By his seventh assignment of error, defendant contends his trial counsel was ineffective in failing to file a motion to reconsider sentence. At the sentencing, trial counsel orally objected to the sentence as being excessive, thereby preserving the issue for appeal. The trial judge noted the objection but did not rule on it at that time. While trial counsel failed to file the motion and appeal, the only prejudice that could have resulted from that failure is if we find defendant was improperly sentenced or that the sentence is excessive.
La.Code Crim.P. art. 881.4 as amended provides, "[t]he appellate court shall not set aside a sentence for excessiveness if the record supports the sentence imposed." Defendant was sentenced on November 3, 1992, subsequent to January 1, 1992, the effective date of the Felony Sentencing Guidelines. The Guidelines have been repealed by Act No. 942, Sec. 3, of 1995, effective August 15, 1995. In State v. Hilton, 95-0586 (La.App. 4 Cir. 11/16/95), 665 So.2d 124, the defendant had been sentenced prior to the effective date of Act No. 942. The court, citing State v. Lennon, 95-0402 (La.App. 4 Cir. 9/15/95), *69 661 So.2d 1047, explained "[w]here a sentencing court articulates the basis for the sentence, it would be a waste of judicial resources to vacate the sentence for failure to consider the old Guidelines and remand for resentencing under the new scheme." Hilton, 665 So.2d at 125.
Defendant was convicted of simple robbery which has a maximum sentence of seven years. As a fourth felony offender, defendant's sentencing range was twenty years to life. La.R.S. 14:59, 15:529.1. Defendant was sentenced to fifty years. At sentencing, the trial judge stated that, because defendant was a habitual offender, the Guidelines were inapplicable. He then stated his reasons for sentencing:
BY THE COURT:
In imposing this sentence, the court has considered various factors:
1) The defendant's conduct threatens serious harm.
The victim of this robbery was an elderly lady in her 80's; the defendant knocked her down. The court feels that his conduct did, in fact, threaten serious harm. The court feels that the defendant knew, or should have known, that his conduct would cause or could threaten serious harm.
The defendant certainly acted freely, without any provocation whatsoever. There were no grounds to excuse or justify the defendant's conduct. Certainly, the victim did nothing to induce the commission of this crime. She was an 80 year old woman, asleep in her bed, when the defendant gained access to her home.
The defendant has a long history of prior criminal activities. He has been convicted of six felonies, several of which involve either ROBBERY or THEFTS at some point. The defendant is certainly in need of custodial treatment.
All the sentences handed down, thus far, have been ineffective, as far as the defendant.

SENTENCING
BY THE COURT:
Being sentenced as a fourth or subsequent offender, the sentencing span is 20 years to natural life.
It is the sentence of the court that the defendant serve 50 years in the Louisiana Department of Corrections.
Because the trial judge properly stated a basis for the sentence, this court's review is limited to excessiveness which defendant raises as assignment of error number eight. Article 1, § 20 of the Louisiana Constitution of 1974, prohibits, "cruel, excessive, or unusual punishment." A sentence which falls within the statutory limits may nevertheless be excessive under the circumstances. State v. Sepulvado, 367 So.2d 762 (La.1979); State v. Naquin, 527 So.2d 601 (La.App. 3 Cir.1988). To constitute an excessive sentence this court must find that the penalty is so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and therefore, is nothing more than a needless imposition of pain and suffering. State v. Campbell, 404 So.2d 1205 (La.1981); State v. Everett, 530 So.2d 615 (La.App. 3 Cir. 1988), writ denied, 536 So.2d 1233 (La.1989). The trial judge is given wide discretion in imposing a sentence, and a sentence imposed within statutory limits will not be deemed excessive in the absence of manifest abuse of discretion. State v. Howard, 414 So.2d 1210 (La.1982).
We cannot say the sentence imposed on defendant is excessive. While fifty years at hard labor for simple robbery may seem inordinate, it is noted that defendant was originally charged with armed robbery and there was testimony from the victim that defendant wielded a knife. Also, defendant pushed the victim against a wall causing her to fall to the ground and incur injury. It was happenstance that the 80 year old victim did not suffer a more serious injury. Furthermore, defendant is a fourth felony offender and has committed prior crimes of theft and burglary. Defendant seems to have little respect for the property of others and shows little promise for rehabilitation.
In State v. Hawkins, 93-1962 (La.App. 4 Cir. 1/27/94), 631 So.2d 1280, writ denied, 94-0556 *70 (La. 5/20/94), 637 So.2d 477, defendant was convicted of armed robbery, adjudicated a fourth felony offender, and sentenced to fifty years. Our brethren in that circuit held the sentence was not excessive because the victim had sustained cuts to her throat during the robbery.
In State v. Bruno, 526 So.2d 1287 (La.App. 3 Cir.1988), the defendant, convicted of armed robbery, was adjudicated a fourth felony offender. In finding that defendant's sixty-six year sentence was not excessive, the court stated:
Defendant had three prior felony convictions. Louisiana jurisprudence supports lengthy sentences for defendants who have multiple prior felony convictions.
In State v. Douglas, 389 So.2d 1263 (La. 1980), the defendant received a ninety-nine year sentence for armed robbery. Douglas' sentence was upheld because he had three prior felony convictions and was believed to be a likely recidivist.
In State v. Causey, 450 So.2d 1071 (La. App. 1 Cir.1984), the defendant received concurrent seventy-five and eighty-year sentences for armed robbery. Causey's sentences were upheld because he was a third felony offender, and because he had solicited witnesses to commit perjury at his trial.
In State v. Wilson, 452 So.2d 773 (La. App. 4 Cir.1984), defendant received a ninety-nine-year sentence. Wilson's sentence was upheld because the appellate court found support for this maximum sentence from defendant's extensive arrest and conviction record.
In the case at bar the defendant had an extensive record of prior convictions. Defendant committed a very serious crime, a crime during which innocent parties could easily have been injured.
The mitigating factors of defendant's family status, and the fact that no actual harm resulted to the victim, should have been considered by the trial court in passing sentence. The aggravating factors and the jurisprudence in factually similar cases supports the trial judge's sentencing choice. Defendant's sentence is not excessive.
Id. at 1292.
Based on defendant's prior record and the likelihood of recidivism, the trial court's sentence of fifty years was not excessive. This assignment of error lacks merit.

ERROR PATENT
There is one error patent. La.Code Crim.P. art. 880 provides that when imposing sentence the trial court shall give the defendant credit toward service of his sentence for time spent in actual custody prior to the imposition of sentence. The record indicates the trial court did not do so. Thus, we amend the sentence to reflect that the defendant is given credit for time served prior to the execution of the sentence. See La.Code Crim.P. art. 882 A. Resentencing is not required; however, we remand this case and order the district court to amend the commitment and minute entry of the sentence to reflect that defendant is given credit for time served. State v. Moore, 93-1632 (La.App. 3 Cir. 5/4/94), 640 So.2d 561, writ denied, 94-1455 (La. 3/30/95), 651 So.2d 858.

CONCLUSION
Sufficient evidence existed for a trier of fact to find that defendant committed the robbery. We do not find that defendant's trial counsel was ineffective in his representation, nor do we find that defendant's sentence of fifty years was excessive in light of his prior felonies. Thus, the conviction is affirmed. The case is remanded and the trial court is ordered to amend the commitment and minute entry of the sentence to reflect that defendant is given credit for time served.
AFFIRMED AND REMANDED WITH INSTRUCTIONS.