# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 22-692

**STATE OF LOUISIANA**

**VERSUS**

**DUSTIN M. MCDOWELL**

\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
TWENTY-EIGHTH JUDICIAL DISTRICT COURT
PARISH OF LASALLE, NO. 21-814
HONORABLE J. CHRISTOPHER PETERS, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*

**SHARON DARVILLE WILSON**
**JUDGE**

\*\*\*\*\*\*\*\*\*

Court composed of Elizabeth A. Pickett, Sharon Darville Wilson, and Gary J. Ortego, Judges.

**AFFIRMED.**

**Chad P. Guillot, Attorney at Law**
**Post Office Drawer 158**
**Marksville, Louisiana  71351**
**(318) 253-6656**
**COUNSEL FOR DEFENDANT/APPELLANT:**
	**Dustin M. McDowell**

**J. Reed Walters, District Attorney**
**W. Evans Dorroh, III, Assistant District Attorney**
**28th Judicial District**
**Post Office Box 1940**
**Jena, Louisiana  71342**
**(318) 992-8282**
**COUNSEL FOR APPELLEE:**
	**State of Louisiana**

**WILSON, Judge.**

Defendant, Dustin M. McDowell, appeals his conviction of the crime of attempted domestic abuse battery with child endangerment and argues that this a non-crime. For the following reasons, we affirm Defendant's conviction and sentence.

## I.

## ISSUES

Defendant asserts two assignments of error:

1. The trial court erred when it placed the charge of "Attempted Domestic Abuse Battery with Child Endangerment" in the list of potential responsive verdicts on the verdict form.

2. The trial court erred when, after the defendant made a request to sequester witnesses and [to have] the victim testify before other witnesses should she not be sequestered, it did not require that the non-sequestered victim testify before other witnesses.

## II.

## FACTS AND PROCEDURAL HISTORY

Defendant, Dustin M. McDowell, and his wife, A.M.,[1] got into an argument at their home in Lasalle Parish on June 13, 2021. Defendant claims that the argument was about his taking their infant child, C.M., for a ride to get her to go to sleep. Defendant's wife, A.M., claims that she was battered by Defendant while their children, C.M., J.M, and K.A., were present in the home.

On October 10, 2021, the State filed a bill of information charging Defendant with one count of domestic abuse battery with child endangerment, in violation of La.R.S. 14:35.3. On May 24, 2022, a petit jury convicted Defendant of the lesser

---

[1] The victims' initials are used to protect their identity in accordance with La.R.S. 46:1844(W).

offense of attempted domestic abuse battery with child endangerment, in violation of La.R.S. 14:27 and 14:35.3.

On July 7, 2022, Defendant filed a motion for new trial, motion to vacate conviction, and motion in arrest of judgment with incorporated memorandum, arguing that attempted domestic abuse battery with child endangerment is not a legislatively authorized responsive verdict to the charged offense of domestic abuse battery with child endangerment. On August 2, 2022, the trial court denied the motions and proceeded with Defendant's sentencing hearing. Defendant was ordered to serve one and one-half years at hard labor, with all but twenty-four hours of the time suspended. Defendant was placed on two years of supervised probation, fined $500.00, and ordered to pay $150.00 toward the cost of the presentence investigation. Defendant now appeals.

## III.

## <u>ERRORS PATENT</u>

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed by this court for errors patent on the face of the record. After reviewing the record, we find, as we did in *State v. Samuel*, 19-408, p. 9 (La.App. 3 Cir. 2/5/20), 291 So.3d 256, 263, *writ denied*, 20-398 (La. 7/24/20), 299 So.3d 77, that the trial court's statement that Defendant was not entitled to diminution of sentence for good behavior and that the sentence was not enhanced was "simply [] an advisement that Defendant's sentence was not subject to diminution and not [] a denial by the trial court of diminution of sentence. We further note that the trial court is no longer required to 'advise' a defendant as to whether his sentence is subject to diminution. La.Code Crim.P. art. 894.1(D)." Therefore, we find no errors patent with respect to the trial court's statement regarding diminution of sentence.

2

The trial court pointed out that the defense failed to object to the jury charge giving attempted domestic abuse battery with child endangerment as a responsive verdict prior to it being given to the jurors and noted that the defense waited until two days before sentencing to object. The defense acknowledges its failure to make a contemporaneous objection; however, it asserts that conviction for a non-responsive verdict is an error patent, which requires no objection. The return of a verdict for a non-crime or a crime that is not responsive to the original charge "is a patent error that does not require a contemporaneous objection." *State v. Brown*, 21-1336, p. 5 (La. 6/29/22), 345 So.3d 988, 991 (per curiam), overruling *State v. Mayeux*, 498 So.2d 701, 702 (La.1996). We find that Defendant is not precluded from raising this argument and discuss the merits thereof below.

## IV.

## LAW AND DISCUSSION

### *Attempted Domestic Abuse Battery with Child Endangerment*

The defense argues that the jury convicted Defendant of a non-crime. Defendant asks this court to recognize his acquittal of domestic abuse battery with child endangerment, reverse his conviction for attempted domestic abuse battery with child endangerment, and remand the matter to the trial court for further proceedings.

Louisiana Revised Statutes 14:35.3(A) defines domestic abuse battery as "the intentional use of force or violence committed by one household member or family member upon the person of another household member or family member." Louisiana Revised Statutes 14:35.3(I) further provides that:

> Notwithstanding any provision of law to the contrary, when the state proves, in addition to the elements of the crime as set forth in Subsection A of this Section, that a minor child thirteen years of age or

3

younger was present at the residence or any other scene at the time of the commission of the offense, the offender, in addition to any other penalties imposed pursuant to this Section, shall be imprisoned at hard labor for not more than three years.

In general, attempt is a lesser grade of the primary crime. Louisiana Revised Statutes 14:27 provides, in pertinent part, that:

> A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
>
> . . . .
>
> C. An attempt is a separate but lesser grade of the intended crime; and any person may be convicted of an attempt to commit a crime, although it appears on the trial that the crime intended or attempted was actually perpetrated by such person in pursuance of such attempt.

Louisiana Revised Statutes 14:37.7 specifically criminalizes domestic aggravated assault with child endangerment. Domestic aggravated assault is defined as "an assault with a dangerous weapon committed by one household member or family member upon another household member or family member." La.R.S. 14:37.7(A). Louisiana Revised Statutes 14:37.7(D) provides that:

> When the state proves, in addition to the elements of the crime as set forth in Subsection A of this Section, that a minor child thirteen years of age or younger was present at the residence or any other scene at the time of the commission of the offense, the mandatory minimum sentence imposed by the court shall be two years imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.

There is no correlating companion crime of domestic abuse simple assault with child endangerment.

The trial court gave the following oral reasons for denying Defendant's motions:

4

Responsive verdicts are governed by Louisiana Code of Criminal Procedure. In this particular case[,] generally[,] it's 814[,] and 815 [is] the applicable provision[]. In this case, we had a charge of Domestic Abuse Battery with Child Endangerment. The charge of Domestic Abuse Battery with Child Endangerment is not provided for in Louisiana Code of Criminal Procedure article 814 in any one of, I think, 67 specific instances. Therefore, you have to refer to article 815[,] which provides that the responsive verdicts for cases not provided in article 814 are either, guilty, guilty of a lesser included grade, whether it be a misdemeanor or felony, or not guilty. I think it's appropriate that an attempt, by definition, would be a lesser and included offense. But the question becomes, presented to me today, is, is an Attempted Domestic Abuse Battery with Child Endangerment anything more than a Simple Assault? Because, specifically, in the Louisiana Criminal Treatise, which every court in the State of Louisiana uses, provides for responsive verdicts in that matter that were provided for here. It's either guilty, . . . it has Guilty of Domestic Abuse Battery, Simple Battery, Simple Assault and Not Guilty. And it had a parenthetical that it did suggest a response verdict of Attempted Domestic Abuse Battery with Child Endangerment. And it does provide a footnote speaking of that and saying it is appropriate in most cases. I used that. I submitted it to counsel. Counsel did not object. I put it on the record regarding the charge conference and the acceptance of the charges. Everybody agreed. I've read the cases cited by defense. I do believe, in this case, there is more to it than [] just a use of force or violence against the person of another. It's kind of similar to the sexual battery allegation. Not only do you have to prove that, you have to prove that person was a domestic partner, someone of an intimate relation, or whatever. And also, there's another victim to this. There's a Child Endangerment component, so that the children present are victims of this. So, I think that it's more than just a Simple Assault. If you go with the simple assault, simple assault doesn't take into account the actual presence of the children or the child. In this case, children. It doesn't take that into account. So I do believe that just a – simply a simple assault would be the only responsive verdict, just for the shear fact you look at, as recognized in section 24 of article 814, simple battery says guilty or not guilty. There's not a responsive verdict of simple assault. . . . That's not the case. So, I do believe that – and I will say, for the record, that the treatise talks about domestic abuse battery, I think by strangulation. It does not talk about Domestic Abuse Battery with Child Endangerment. However, I extrapolate toward that[,] and that's how the provisions were required. So, I'm going to deny your Motion to Vacate the Conviction and your Motion in Arrest of Judgement.

Since domestic abuse battery is not one of the specific offenses listed in La.Code Crim.P. art. 814, La.Code Crim.P. art. 815 controls the appropriate responsive verdicts. "In all cases not provided for in Article 814, the following

5

verdicts are responsive: (1) Guilty; (2) Guilty of a lesser and included grade of the offense even though the offense charged is a felony, and the lesser offense a misdemeanor; or (3) Not Guilty." La.Code Crim.P. art. 815.

In the instant case, the responsive verdicts given to the jury were: (1) attempted domestic abuse battery with child endangerment, (2) domestic abuse battery, (3) simple battery, (4) simple assault, and (5) not guilty.

Defendant argues that *State v. Trackling*, 04-3222 (La. 1/19/06), 921 So.2d 79, which held that attempted sexual battery is a crime, is distinguishable from Defendant's case because *Trackling* involved a sex offense. Defendant further contends that the trial court erred in following the rationale in *Trackling* by holding that the elements in addition to the battery in the offense of domestic abuse battery with child endangerment made the attempt to commit the offense a crime. Defendant urges that the extra elements should have been disregarded and that the district court should have focused solely on the battery elements of domestic abuse battery with child endangerment. Defendant maintains that, because sexual battery is located in the sex offense section of the Louisiana Revised Statutes and because it has its own definition, including a sexual component, it has a special status separate from domestic abuse battery with child endangerment. Defendant claims that the *Trackling* court specifically held that the existence of additional elements to a battery did not make attempted battery a crime and foreclosed prosecution of attempted sexual battery.

The State responds that attempted domestic abuse battery with child endangerment is a valid responsive verdict to domestic abuse battery with child endangerment. The prosecution points out that the Louisiana Civil Law Treatise's entry on criminal jury instructions includes attempted domestic abuse battery by

6

strangulation as a responsive verdict to domestic abuse battery by strangulation. The State explains that the Louisiana Civil Law Treatise also provides attempt as a responsive verdict to second, third, and fourth offense domestic abuse battery. The prosecution maintains that the elements in addition to battery contained in domestic abuse battery with child endangerment means that attempted domestic abuse battery with child endangerment was a lesser included offense and valid responsive verdict. The State points out that it gave the responsive verdicts in Defendant's case under La.Code Crim.P. art. 815, rather than La.Code Crim.P. art. 814.

Louisiana courts have repeatedly found that attempted battery, attempted aggravated battery, attempted second degree battery, attempted battery of a police officer, and attempted battery of a corrections officer are either not responsive to the degree of battery charged or are non-crimes since there are statutory equivalents such as assault, aggravated assault, etc. *See State v. Johnson*, 01-6 (La. 5/31/02), 823 So.2d 917; *Mayeux*, 498 So.2d 701; *State v. Lambert*, 15-629, (La.App. 4 Cir. 3/16/16), 191 So.3d 630, *writ denied*, 16-681 (La. 4/7/17), 218 So.3d 109; *State v. Joshua*, 42,766 (La.App. 2 Cir. 1/9/08), 973 So.2d 963, *writ denied*, 08-358 (La. 9/19/08), 992 So.2d 951; *State v. Arita*, 01-1512 (La.App. 4 Cir. 2/27/02), 811 So.2d 1146; *State v. Marsh*, 17-584 (La.App. 4 Cir. 11/8/17), 231 So.3d 736; and *State v. Nazar*, 96-175 (La.App. 4 Cir. 5/22/96), 675 So.2d 780.

In contrast, Louisiana courts have also held that attempted sexual battery is a valid offense and a valid responsive verdict to a charge of sexual battery. *Trackling*, 921 So.2d 79; *State v. Ponsell*, 33,543 (La.App. 2 Cir. 8/23/00), 766 So.2d 678, *writ denied*, 00-2726 (La. 10/12/01), 799 So.2d 490.

7

The trial court, the prosecution, and the defense all relied, to some extent, on *Trackling*, 921 So.2d at 81-85 (emphasis added) (footnotes omitted) (citations omitted):

The sole issue presented for our review is whether the charged offense, attempted sexual battery, is a valid crime in Louisiana.

. . . .

In the instant case, the court of appeal examined the language of LSA-R.S. 14:43.1 and determined that the statute defines sexual battery "simply as a battery of a specific portion of the victim's body." *Trackling*, 04-0759 at 13. Noting that LSA-R.S. 14:36 defines assault as "an attempt to commit a battery, or the intentional placing of another in reasonable apprehension of receiving a battery," the court [of appeal incorrectly] reasoned that an attempt to touch "a specific portion of the victim's body" intentionally *(i.e.,* to commit a sexual battery) would, by definition, constitute an assault, and that, as a result, the crime charged, attempted sexual battery, is not a valid offense.

. . . .

Drawing upon *Johnson* and *Mayeux*, the court of appeal in the instant case concluded that "there can be no legal conviction for a charge of 'attempted' battery, even when that battery has specific additional elements," thereby "foreclos[ing] a prosecution for violating La. R.S. 14:27 (43.1)." *Trackling*, 04-0759 at 15. Because it found that defendant had not been charged with a "valid crime," the court of appeal held that the trial court erred when it denied the motion to quash, and reversed defendant's conviction and sentence. *Id*.

. . . .

In *State v. Schenck*, 513 So.2d 1159 (La.1987), this court examined LSA-R.S. 14:43.1 in the context of a sufficiency of the evidence challenge to the defendant's conviction of sexual battery. After examining the history and language of the statute, we noted that sexual battery is a responsive verdict under LSA-C.Cr.P. art. 814(A)(8), (10), and (12) where aggravated rape, forcible rape or simple rape is charged, "evidencing a legislative scheme that envisions sexual battery as encompassing conduct falling short of actual rape but which is sexually intrusive and more egregious than a simple battery." *Schenck*, 513 So.2d at 1162. . . .

Relying on *Schenck*, in *State v. Ponsell*, 33,543, pp. 7-8 (La.App. 2 Cir. 8/23/00), 766 So.2d 678, 683-684, the Court of Appeal, Second Circuit . . . . determined that attempted sexual battery is a lesser

8

included grade of the crime of sexual battery and that all of the elements of attempted sexual battery are elements in sexual battery.

In the instant case, the court of appeal acknowledged the decisions in *Schenck* and *Ponsell*, but ultimately dismissed them, finding that the statute under consideration in *Schenck* was subsequently amended to delete the compulsion element, thereby reducing the offense to no more than a battery of a specific portion of the victim's body. Although the crime of sexual battery no longer includes the element of compulsion that it did at the time *Schenck* was decided, that change does not, as the court of appeal opined, render the offense simply a "battery of a specific portion of the victim's body;" nor does the change undermine this court's characterization of the crime as conduct "falling short of actual rape but which is sexually intrusive and more egregious than a simple battery." *Schenck*, 513 So.2d at 1162.

. . . .

Recognizing the substantive differences between the offenses and the conduct they proscribe, we note that unlike simple battery, which has a companion offense for cases in which an attempt to commit the crime has occurred (LSA-R.S. 14:38, simple assault), sexual battery has no companion for cases in which the defendant's effort to touch the victim's anus or genitals is ultimately frustrated. The fact that aggravated assault (LSA-R.S.14:37) and simple assault (LSA-R.S.14:38) are both designated as offenses in Louisiana lends support to the conclusions in *Mayeux* and *Johnson* that attempted aggravated battery and attempted battery are not separate, cognizable offenses. As regards the crimes of aggravated battery and simple battery, separate statutes criminalize the attempt. However, there is no statutory provision proscribing sexual assault. As a result, it appears that there is no logical or legal impediment to charging a defendant with attempted sexual battery.

Attempted sexual battery is a cognizable offense in the same way that attempted first degree murder and second degree murder are cognizable offenses; not because the legislature has specifically denominated the crimes, but because the definitions of the completed offenses in LSA-R.S. 14:30 and 14:30.1 coalesce with the general attempt statute, LSA-R.S. 14:27, to produce that result.

**All crimes in Louisiana are statutory. There can be no crime which is not defined and denounced by statute.** In this instance, sexual battery is a crime denounced and defined by statute, LSA-R.S. 14:43.1. Another statute, LSA-R.S. 14:27, makes an attempt to commit a crime an offense. These two provisions coalesce, with the result that the offense charged, attempted sexual battery, is a crime denounced and defined to be such under the statutory laws of this state.

9

The Louisiana Supreme Court has explained that, in order for a crime to qualify as a responsive verdict, the commission of the primary crime must also accomplish the crime being listed as a responsive verdict.

> [B]ecause [a] reasonable state of facts can be imagined wherein the greater offense second degree kidnapping is committed without perpetration of the lesser offense of simple kidnapping, a verdict of guilty of simple kidnapping is not responsive to a charge of second degree kidnapping.

*State v. Price*, 17-520, p. 8 (La. 6/27/18), 250 So.3d 230, 235.

Because there is no correlating companion crime of domestic abuse simple assault with child endangerment, the jurisprudence holding that various types of attempted batteries are non-crimes because they have a correlating companion crime of that specific type of assault does not apply to the instant case. Domestic abuse battery with child endangerment is similar to the sexual battery cases in that it contains elements in addition to the battery. Domestic abuse battery with child endangerment (and any attempt thereof) requires additional proof of a specific type of offender, a specific type of victim, and the presence of a child.

"Lesser and included offenses are those in which all of the essential elements of the lesser offense are also essential elements of the greater offense charged." *Price*, 250 So.3d at 231. This court finds that attempted domestic abuse battery with child endangerment is a <u>valid crime</u> that is responsive to the charged offense of domestic abuse battery with child endangerment.

*Sequestration and Order of Witnesses*

Louisiana Code of Evidence Article 615(A) provides, in pertinent part, for the sequestration of witnesses as a matter of right: "On its own motion the court may, and on the request of a party the court shall, order that all witnesses be excluded from the courtroom . . . and refrain from discussing the facts of the case with anyone

other than counsel in the case." By its own terms, this article does not apply to "[t]he victim of the offense or the family of the victim." La.Code Evid. art. 615(B).

Defendant claims that the trial court erred when it did not require that the non-sequestered victim testify before other witnesses after the defense made a request to sequester witnesses or to have the victim testify before other witnesses should the victim not be sequestered. Defendant cites *State v. Lopez*, 562 So.2d 1064, 1066 (La.App. 1 Cir. 1990), for the premise that "[t]he purpose of sequestration is to assure that a witness will testify as to his own knowledge of the events, to prevent the testimony of one from influencing the testimony of others, and to strengthen the role of cross-examination in developing facts." Defendant further cites *Lopez* for its ruling that it was reversible error for the State to not require its principal witness, who was also the representative for the State, to testify first.

Defendant argues that it was a reversible error to call the adult victim, A.M., to testify as the third witness at trial, which was after one of the child victims and a deputy. The defense concedes that having LaSalle Parish Patrol Deputy Judd Roark (Deputy Roark) testify before A.M. was not significant. Defense counsel posits, however, that allowing the child victim to testify first was detrimental because the children and A.M. were the only people present during the incident who testified against Defendant; thus, having their testimonies align would have been an important credibility factor for the jury.

Prior to the commencement of trial, the defense moved to sequester all witnesses, including the victims of the offense, but the district court held that the victims and the State representative were not subject to the rule of sequestration. Defense counsel again moved to sequester all witnesses in the case, including the victims. The State agreed to sequester the child victims but refused to allow the

11

defense to have A.M. excluded from the courtroom. The defense then moved to have the court require that the prosecution call A.M. as its first witness under *Lopez*. The trial court denied the motion to sequester A.M. The district court did not specifically rule on the order of witnesses, but it pointed out that the defense could cross-examine A.M. on anything she said that was inconsistent with a prior statement.

The State asserts that the trial court acted within its authority when it permitted A.M., whose status as the victim exempted her from sequestration, to remain in the courtroom and to testify after other fact witnesses.

In *Lopez*, the first circuit held that allowing the police officer serving as the State's case agent to testify after other witnesses constituted reversible error when the success of the prosecution's case relied almost entirely on the credibility of law enforcement's testimony.

> Specifically, the defendant contends it is possible that Commander Hyatt violated the sequestration order by conferring with other State witnesses in order to assure a conviction. However, this contention is mere speculation by the defendant; and there is no evidence from the record that Commander Hyatt engaged in such conduct. The more serious argument advanced by the defendant is that, since the trial court granted the State's request to allow Commander Hyatt to remain at the prosecution table throughout trial, Commander Hyatt should have testified first, as contemplated by Comment (d) to Louisiana Code of Evidence Article 615, especially since the State's case depended almost completely on the credibility of law enforcement witnesses. We agree. In the instant case, Commander Hyatt was the principal witness against defendant, and, as the State's representative, he was permitted to listen to the testimony of some of the other State witnesses before he testified. In fact, Commander Hyatt testified after Trooper Blanchard, a key prosecution witness, who made the initial traffic stop of defendant. Clearly, permitting Commander Hyatt to serve as the representative of the State, without requiring him to testify first, violated applicable law.

> For the above reasons, we conclude that the instant assignment of error has merit. Therefore, the defendant's conviction and sentence are hereby reversed. Accordingly, this case is remanded to the district

12

court for further proceedings consistent with the views expressed herein.

*Lopez*, 562 So.2d at 1066-1067 (footnotes omitted).

This case is distinguishable from *Lopez*. In the instant case, the defense is not objecting to the State's law enforcement representative for the case testifying after the other witnesses as was done in *Lopez*; instead, defense counsel is objecting to the refusal to require the primary victim to testify before all other fact witnesses.

The State advances that there are cases where the victims were allowed to stay in the courtroom regardless of who testified first. *See State v. Clark*, 52,256 (La.App. 2 Cir. 11/14/18), 259 So.3d 1178; *State v. Strother*, 43,363 (La.App. 2 Cir. 8/20/08), 990 So.2d 130, *writ denied*, 08-2289 (La. 5/15/09), 8 So.3d 580; and *State v. J.M.*, 06-624 (La.App. 3 Cir. 11/2/06), 941 So.2d 686. The State further alleges that the record does not show that either K.A's or Deputy Roark's testimonies influenced A.M.'s testimony. As such, the prosecution argues that there are no grounds to reverse Defendant's conviction. We agree.

Before trial, as agreed by the State, both K.A. and J.M., the juveniles present during the incident, were sworn in by the district court and sequestered. A.M., the primary victim in the incident, was sworn in and remained in the courtroom. At trial, the State called K.A. to testify as its first witness. Then, the prosecution called Deputy Roark to testify as its second witness. The State then called A.M. as its third witness. Deputy Steve Pool was the fourth and final witness to testify for the State. Defendant was the first and only witness to testify for the defense. J.M. did not testify.

In *State v. Cooper*, 96-119 (La.App. 3 Cir. 7/17/96), 678 So.2d 59, *writ denied*, 96-2121 (La. 1/24/97), 686 So.2d 857, the defense failed to object to the

13

order of witnesses during trial and raised the matter on appeal as an ineffective assistance of counsel for failure to object claim. As such, in order to be entitled to relief, there must have been some prejudice to the defense, and this court found no such prejudice.

> The specific prejudice alleged by defendant on appeal concerns the time frame of when Officer Dibble completed his incident report, when he allegedly saw the defendant in the store, and when defendant's girlfriend testified he left their home. In other words, defendant alleges that after Officer Dibble heard the alibi testimony, he either created or adjusted his testimony concerning the time and location that he saw defendant on the night of the robbery so as to imply that defendant was in the area shortly after the robbery. As we stated earlier, Officer Dibble's testimony did not rebut the testimony of the alibi witnesses since he did not contradict defendant's girlfriend's claim that the defendant left the house after 11:30 p.m. Defendant's mother simply testified he left her house at 9:00 p.m.

> At most, Officer Dibble's testimony was circumstantial and tangential to the issue of defendant's guilt. If believed, it simply proves defendant was in the area shortly after the robbery. Considering the eyewitness testimony of the victim, which we have concluded was sufficient to support the verdict of guilty of simple robbery, the admission of Officer Dibble's testimony was harmless error.

*Id*. at 65.

The first circuit later clarified that, in order to reverse on grounds that the State's case agent was allowed to testify after other witnesses, there must be prejudice to the defense:

> Generally, the problem of exempting a witness as the State's representative is the potential danger that his testimony might be influenced by listening to the testimony of the other witnesses. *See State v. Lopez*. In his brief to this Court, the defendant notes that Phares [the State's law enforcement case agent] testified on two separate occasions during the trial. Phares was called as the second witness in the case, after the first witness gave testimony relating only to particular addresses located on a map which contained the Goodwood Homesites Subdivision. The defendant concedes that the testimony of this first witness could not possibly have influenced Phares' testimony. However, the defendant contends that, when Phares was recalled to the

14

stand the second time, twenty-two lay witnesses, fifteen police officers, and four experts had testified in the interim. The defendant concludes: "The high probability that Chief Phares' testimony was influenced by the prior 41 witnesses is extremely prejudicial to the appellant."

For the reasons which follow, we disagree with the defendant's assertion of this "high probability" of prejudice. In overruling the defendant's objection, the trial court noted that Phares was not a fact witness to the shooting. However, the trial court found that Phares was a fact witness regarding the taking of statements from Michael Carter and the defendant. The trial court ruled that Phares could not be present in the courtroom whenever any other witness would give testimony in those two areas. Noting that Baton Rouge City Police Officers Steve Woodring and Ben Odom might testify in those two areas, the trial court ruled that Phares should not be present in the courtroom during their testimony. As the State correctly notes in its brief to this Court, Officer Woodring did not testify at the trial; and there is no indication in the record that Phares was present in the courtroom during the testimony of Officer Odom. Nevertheless, even if Phares remained in the courtroom during Odom's testimony, the State also correctly notes that Officer Odom did not give any testimony about the taking of statements from Carter or the defendant.

Moreover, Phares testified in a pretrial hearing and during the first trial. We have reviewed his testimony from this pretrial hearing and from the first trial and find that it was substantially similar to his testimony at the instant trial, which negates any practical possibility that his testimony at the instant trial could have been influenced by the previous testimony of any other State witness. Accordingly, given the precautionary steps taken by the trial court to assure that Phares' designation as the State's case agent would not prejudice the defendant, we find no error in the trial court's ruling; and we conclude that the defendant was not prejudiced in any manner when considering all of the circumstances noted above.

*State v. Parker*, 625 So.2d 1364, 1373-1374 (La.App. 1 Cir. 1993) (citations omitted), *writ denied*, 632 So.2d 761 (La.1994).

A different standard applies to the order of victims who testify at trial. In *Clark*, 259 So.3d at 1187-88 (citations omitted), the second circuit held that victims are exempt from sequestration and are not required to be excluded from hearing the testimony of other witnesses before giving their testimonies:

In his second assignment of error, Clark asserts that the trial court erred in allowing Coleman to remain in the courtroom throughout the

testimony of all state witnesses because it influenced his testimony. Because Coleman was not able to identify Clark prior to trial as a person involved in the offense but subsequently made an in-court identification of Clark after sitting through several days of testimony, Clark argues that his constitutional right to a fair trial was violated because Coleman's testimony was not free of influence and did not come from his own memory. Clark asserts that the trial court could have taken remedial measures to prevent such influence on Coleman's testimony, such as having Coleman testify prior to the other witnesses.

. . . .

Here, during the course of the investigation, Coleman was shown a lineup containing Clark but was unable to identify Clark as one of the suspects involved in the robbery. However, during trial, Coleman identified Clark as being involved in the shooting. Coleman denied that being in the courtroom had affected the veracity of his testimony. However, Coleman did admit that hearing the testimony of other witnesses had helped him to remember "a little bit."

Clearly, as the victim, Coleman had the right to remain in the courtroom and was not subject to the sequestration order. The trial court appropriately weighed the purpose of the sequestration order against the statutory provision excluding victims from a sequestration order and advised the jury that they ultimately weigh the credibility of witnesses based on all of the testimony they hear and see. Furthermore, a witness's failure to identify the suspect at a pretrial lineup does not constitute grounds to bar an in-court identification, but, rather, goes to the weight of that witness's testimony; evidence may be introduced to explain any discrepancy. Coleman's testimony was not the sole, or even the most compelling, evidence against Clark. The totality of the corroborating evidence identified Clark as a participant in the crime; therefore, Clark fails to show he was substantially prejudiced by Coleman's presence in the courtroom during the entirety of the trial. Given the foregoing, there was no abuse of discretion, and this assignment of error is without merit.

In *J.M.*, 941 So.2d at 693-695, this court found that victims were allowed to be in the courtroom during the testimonies of other witnesses:

Defendant asserts that the trial court committed reversible error when it denied his requests at trial to sequester the victims.

. . . .

On the morning of trial, Defendant asked that the victims be excluded from the courtroom during each other's testimony. Defendant asserted that his right to proper cross-examination would be violated

16

because the victims could feed off one another or look to each other for support throughout the testimony. The trial court denied Defendant's request, stating that it had no authority to exclude the victims and their families. Moreover, the trial court noted that the videotapes would show any discrepancies in the testimonies.

In *State v. Johnson*, 01-2334, p. 5 (La.App. 4 Cir. 12/4/02), 833 So.2d 508, 511, the defendant complained because one of the two victims he robbed was allowed to remain in the courtroom during the other victim's testimony. Finding that the defendant's right to effective cross-examination was not violated, the fourth circuit held:

. . . .

> In this case, the record shows that Thuy Trinh's testimony was not influenced by her mother's testimony, and that the defendant's ability to cross-examine Thuy Trinh was not undermined. Thuy Trinh's testimony at the motion hearing was identical to the information she provided Detective Deiringer on the day of the offense.

. . . .

> As noted by the trial court in the present case, the victims' testimonies at trial were essentially corroborated by the videotapes made at the Children's Advocacy Center and each other. While there were minor deviations from the facts alleged, there was nothing to indicate that the victims were testifying in support of or influenced by each other's testimony. This assignment of error is without merit.

The instant case is distinguishable from *Lopez* since Defendant's claim involves the testimony of a victim. Significantly, Defendant neither alleges that there exists nor cites to any prior inconsistent statement(s) showing that the testimonies should not have aligned. Additionally, defense counsel makes no allegation that he was prevented from using any prior inconsistent statement to discredit the State's witnesses. Thus, the defense's claims of prejudice are all hypothetical, and defense counsel fails to claim actual prejudice to Defendant's case.

Accordingly, this assignment of error is without merit.

## V.

## <u>CONCLUSION</u>

We find that both of Defendant's assignments of error are meritless. Therefore, Defendant's conviction and sentence are affirmed.

**AFFIRMED.**