SANDRA CABRINA JENKINS, Judge. .
I iDeferidant, Joseph Lambert, appeals his conviction and sentence for first degree robbery and his adjudication as a second felony offender. As-to his conviction for first degree robbery, we find no merit to defendant’s assigned errors and we affirm the conviction. As to the adjudication of defendant as a second felony offender, we find merit in defendant’s argument that his 2008 guilty plea to attempted aggravated second degree battery — a non-crime under Louisiana law — cannot be used as a valid predicate conviction under the habitual-offender statute, La. R.S. 15:529.1. Accordingly, we vacate defendant’s adjudication and sentence as a second felony offender and reinstate the original sentence of twenty years at hard labor, without benefit of parole, probation, or suspension of sentence.
STATEMENT OF THE CASE
Defendant was charged in a bill of information with a violation of La. R.S. 14:64, armed robbery with a firearm.[1] Following a jury trial, defendant was found12guilty of the lesser, responsive verdict of first degree robbery. The trial court denied defendant’s motion for -new trial and sentenced defendant to twenty years at hard labor without benefit of parole, probation, or suspension of sentence. On that same date, the trial court denied defendant’s motion to quash the habitual offender bill filed by the State charging defendant as a second felony óffendér. Prior to a hearing on the habitual offender bill, defendant re-urged the motion to quash the bill and the trial court again denied the motion. Following the hearing on the habitual offender bill, the trial court adjudicated defendant a second felony offender, vacated his original sentence, arid resentenced him to twenty-five years at hard labor.[2]' Defendant’s timely appeal followed.
STATEMENT OF FACT
On February 13, 2014, between 6 p.m. and 7 p.m., Damian Brown was robbed at gunpoint while walking home from a grocery store. Brown ran to the home of a close family friend across the street from where he was robbed and called the police. *634 Several officers responded to the seéne and quickly apprehended the, defendant through the victim’s and officers’ description and eventual identification of the defendant as the suspect who robbed the victim at gun point and who the initial officer observed in the area of the robbery within minutes of receiving the call. .
Detective Kelly Morel of the . New Orleans Police Department (NOPD) was on proactive patrol driving northbound on Orleans .Ave. when she responded to a Isdispatch call of an armed robbery with a firearm near Bayou Road and North Johnson St. The dispatcher reported that two black, male suspects fled toward Ursulines Ave. When Det. Morel turned onto North Rocheblave St. toward Ursulines Ave., she observed two males on one.bicycle, one pedaling and the other sitting on the handlebars. The male sitting on the handlebars had his right hand extended out, holding onto the handlebars of a second bicycle, pulling it alongside of them. Dpt. Morel observed one male wearing a black sweatshirt and the other male wearing a gray sweater, matching the description of the perpetrators and a bicycle given by the dispatcher. As Det. Morel pulled alongside the suspects, they jumped off the bicycle and fled northbound on Gov. Nic-holls St. Det. Morel notified dispatch.that she observed suspects fitting the description and she was in pursuit of the suspects. While in pursuit, Det. Morel observed one suspect jump over a three to four foot tall spiked iron fence and , run down an alley alongside a residence. The second suspect attempted to jump over the same fence but got caught on one of'the spikes on the fence. Det. Morel reached out to grab the suspect but he was able to break free from the iron spike and fled. Det. Morel described the second suspect as having dreadlocks and wearing a black hooded sweatshirt with dark blue jeans.
Det. Morel then returned to the location where she had first observed the suspects. She noticed the suspect she attempted to grab was on the front steps of a residence. A resident began flicking the outside light, which' Det. Morel believed was to signal her to get the suspect. At this time, other officers had arrived on scene. Det. Morel and another officer approached the suspect and handcuffed him. 14Pet. Morel noticed that the suspect’s pants were torn and asked him if. he needed an. ambulance. The suspect.remained silent. Det. Morel then patrolled the- area looking for the other suspect she had observed earlier, but did not find him.
During her testimony, Det. Morel identified a booking photo óf defendant from the date of his arrest and stated it was an accurate reflection of defendant’s appearance on that date. She also made an in-eourt identification of defendant as the same person she had pursued, observed getting stuck on the iron fence, and later apprehended on February 13, 2014.
ÑOPD Officer Christopher Long testified that, on February 13, 2014, he responded to ah armed robbery with a firearm on' North Johnson St. and Bayou Road'. Officer Long briefly spoke to the victim who provided him with a description of the suspects. When Det. Morel notified dispatch that she observed two black males fitting the description, Officer Long relocated to-Gov. Nicholls St. and North Rocheblave St. He observed a black male wearing a gray and bla¡ck sweatshirt and blue jeans, fitting the description that Det. Morel had broadcast, walking up to a residence. Officer Long decided to conduct a stop,. asking the male to step forward. Det. Morel advised him that the male was the person who fled from her,' and. they detained him.
Officer Long Confirmed that he did not see the defendant throw down' a handgun. *635 Also, when he patted the defendant down for weapons before placing him in the back of the police cari he did not find any gun on defendant’s person. Officer Long identified the sweatshirt and jeans defendant was wearing at the time he was detained; he had observed' that the jeans were ripped. Officer Long recalled |Bthat upon defendant being booked at lock-up, defendant alerted the jail medical staff that he had an injury to his scrotum/genital area.
NOPD Det. Thomas Ripp testified that through his investigation of the armed robbery, he learned' that the perpetrators were two black males, one wore a gray sweatshirt and the other'wearing a black or gray hooded sweatshirt. He also was informed that one of the perpetrators wore dreadlocks. Det. Ripp left the'police station when he heard Det. Morel put- out a call for assistance. He identified on a map the location of the armed robbery at North Johnson St, and Bayou Road, as well as the location of the apartment where- he spoke to the victim. Det. Ripp confirmed that the description of the perpetrators broadcast by the 911 operator matched the description given to him by the victim.
Det. Ripp confirmed that he conducted a show-up lineup with the victim. He transported the victim to the ‘ location where defendant was being detained at North Rocheblave and Gov. Nicholls Sts. Det. Ripp and the victim remained in .the patrol car while Det. -Ripp communicated by radio with the uniformed ■ officers at “the scene, who then removed defendant from the back of a marked partrol car. .Det. Ripp testified that the victim made an immediate identification of the defendant who was in handcuffs. According to Det. Ripp, the victim indicated, he was positive of his identification and he knew the defendant from the neighborhood.
Det. Ripp authored the police report for this incident. He stated he was unable to find- any video surveillance from cameras in the area of the-, robbery, although he noted that the convenience store at the corner of Esplanade Ave. and North Johnson St., where the victim was coming from at the time of the robbery, Rhad a surveillance camera.- Det. Ripp stated that he attempted to retrieve and view- the video from that convenience store surveillance camera; but there was a technical difficulty and the video could not be played or viewed. He also stated that 'he tried unsuccessfully to Obtain and view video from three businesses in the area.
Det. Ripp testified that he elected to do a show-up identification because defendant was apprehended so soon and only - six blocks away from the scene of the robbery. On cross-examination, Det. Ripp confirmed that the robbery occurred in the evening hours, when it was dark outside, and that the area of the robbery was not brightly lit; He stated, however, that .during the show-up identification of defendant by the victim, his police vehicle headlights were shining on .defendant and another officer shined a flashlight in defendant’s face. Defendant was then arrested for armed robbery.
- Damian Brown testified that he was robbed on . February 13, 2014, between 6p.m. and 7p.m., when it was dark outside. .He stated that he was walking home from the Discount Express grocery store. At the intersection of North Johnson St. and Bayou Road, two black males approached him. Mr. Brown testified that he recog■nized one of the individuals, who had .dreadlocks and was wearing a black hoodie and jeans; he had seen this individual on multiple occasions walking, in the neighborhood.but he did not know the man’s name. Mr. Brown identified defendant as the person he had recognized that night and who robbed him. Mr. Brown stated that defendant asked him .about some pills but then *636 walked past Mr. Brown. Then defendant got behind him, produced a handgun, and told him to lie on the ground and to give him what he had; Mr. Brown replied “this is all I have, fright here.” Then, defendant went through Mr. Brown’s pockets, removed eighteen dollars and his cell phone, and fled. Mr. Brown then ran to the home of a close family friend across the street from where he was robbed and he called 911. Mr. Brown identified his voice on the 911 call recording. Mr. Brown testified that he was very confident that defendant was the man who robbed him while armed with a gun on February 13,. 2014.
ASSIGNMENT OF ERROR NUMBER 1
In his first assignment of error, defendant argues that the evidence is insufficient to sustain his conviction for first degree robbery. Specifically, defendant argues that the State failed to prove beyond a reasonable doubt that he was the individual who committed the robbery.
This Court set forth the well-settled standard of review for sufficiency of the evidence in State v. Watkins, 13—1238, pp. 13-14 (La.App. 4 Cir. 8/6/14), 146 So.3d 294, 303, as follows:
In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate' court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 660 (1979); State v. Green, 588 So.2d 757 (La.App. 4 Cir.1991). However, the reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime. State v. Mussall, 523 So.2d 1305 (La.1988). The reviewing court must consider the record, as a whole since that is what a rational trier of fact would do. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier’s view of all the evidence most favorable to the prosecution must be adopted. The fact finder’s discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Mussall; Green, supra. “[A]- reviewing court is not called upon to decide whether it,believes the witnesses or whether .the conviction is contrary to the weight of the evidence.” State v. Smith, 600 So.2d 1319 (La.1992) at 1324.
| sIn addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of' proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. This is not a separate test from Jackson v. Virginia, supra, but rather an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable, doubt. State v. Wright, 445 So.2d 1198 (La.1984). All evidence, direct and circum.stantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, 504 So.2d 817 (La.1987).
Watkins, 2013-1238, p. 13-14, 146 So.3d at 294, 303, quoting State v. Huckabay, 2000-1082, p. 32: (La.App. 4 Cir. 2/6/02), 809 So.2d 1093, 1111.
In addition, when the identity of the defendant as the perpetrator is disputed, the State must negate any reasonable probability of misidentification in order to satisfy its burden under Jackson v. Virgi *637 nia, supra. State v. Galle, 11-0930, p. 31 (La.App. 4 Cir. 2/13/13), 107 So.3d 916, 935; State v. Everett, 11-0714, p. 15 (La.App. 4 Cir. 6/13/12), 96 So.3d 605, 619. Nonetheless, the testimony of a single witness, if believed by the trier of fact, is sufficient to support a conviction. Watkins, 13-1238, p. 14, 146 So.3d at 303, citing State v. Wells, 10-1338, p. 5 (La. 4 Cir. 3/30/11), 64 So.3d 303, 306. The fact-finder’s decision concerning the credibility of a witness will not be disturbed unless it is clearly contrary to the evidence. Watkins, supra.
In this case, defendant argues that the State failed to prove beyond a reasonable doubt that he was the individual who committed the robbery. Defendant argues that the lack of reliable identification evidence led to the jury’s irrational conclusion that he committed the robbery.
In assessing the reliability of eyewitness identifications when reviewing the sufficiency of the evidence, this Court applies the five factors set forth by the 1 flUnited States Supreme Court in Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), which are as follows: (1) the opportunity of the witness to view the perpetrator at the time of the crime; (2) the witness’s degree of attention; (3) the accuracy of the witness’s prior description of the perpetrator; (4) the level of certainty demonstrated by the witness; and (5) the length of time between the crime and the identification. State v. Cooper, 12-0174, p. 15 (La.App. 4 Cir. 7/10/13), 120 So.3d 844, 852, citing State v. Stewart, 04-2219, p. 6 (La.App. 4 Cir. 6/29/05), 909 So.2d 636, 639. These five factors are applied to determine whether an identification made under suggestive circumstances arranged by the police'created a “substantial likelihood of misidenti-fication.” Perry v. New Hampshire, — U.S. —, 132 S,Ct. 716, 724-726, 181 L.Ed.2d 694 (2012)(“The due process check for reliability, Brathwaite made plain, comes into play only after the defendaht establishes improper police conduct. The very purpose of the check, the Court noted, was to avoid depriving the jury of identification evidence that is reliable, notwithstanding improper police conduct.”). (Emphasis in original).
In the present case, the identification procedure employed by the police was a show-up identification, which is a “one-on-one” identification procedure. One-on-one identifications are generally not favored, although such identification procedures are permissible when justified by the circumstances. State v. Briley, 13-1421, p. 16 (La.App. 4 Cir. 10/1/14), 151 So.3d 633, 643; State v. Nelson, 08-0584, p. 5 (La.App. 4 Cir. 12/17/08), 3 So.3d 57, 60. One-on-one identifications are permissible when the accused is apprehended within a relatively short period of time after the occurrence of the crime and is returned to the scene for immediate identification. Briley, 13-1421, p. 16, 151 So.2d at 643-644; State v. Robinson, 09-0922, p. 2 (La.App. 4 Cir. 3/10/10), 50 So.3d 158, 160. Immediate confrontation assures the reliability of the identification (given that the perpetrator’s appearance is fresh in the witness’s mind), lessens the possibility that the perpetrator’s clothes or appearance will be changed, and insures early release of innocent subjects. Nelson, 08-0584, pp. 5-6, 3 So.3d at 61.
Although this Court cited the general rule in Briley that a one-on-on show-up identification is not per-se suggestive, it noted in that case that the defendant was exhibited to the victim in a spotlight, while handcuffed and flanked by at least one police officer. In addition, the victim testified that before the identification, officers advised him that they wanted him to look at a “possible suspect,” leading this court *638 to state: “Considering these factors, even though the. victim testified that he was not coerced into identifying the defendant, the one-on-oné/show-up identification in this case was arguably suggestive” Briley, 13-1421, p. 17, 151 So.3d- at 644. Thus, this court employed the five Mamón factors in assessing the reliability of the identification.
In the present case, testimony and evidence presented at trial was relevant to the issue , of the reliability of victim’s identification of the defendant as the person who robbed him.
The victim, Mr. 'Brown, testified that the location where he was robbed was lit by a corner streetlight. The robbery occurred between 6 p.m. and 7 p.m. on February 13, 2014. NOPD Det. Kelly Morel, the first officer to respond, testified that the armed robbery call came out around 6:30 p.m., which is consistent with Brown’s testimony. Lead investigating Det. Ripp confirmed on cross examination that the robbery occurred when it was dark out; that there were several trees at the | , intersection of North Johnson St. and Bayou Rd. where the robbery occurred; that the trees blocked out some ambient light; and that it was not brightly lit. Mr. Brown testified that he had a good look-at the defendant’s face, although he acknowledged that he was focused on the gun pointed'at him, and he recognized defendant from seeing him in the neighborhood.
Mr. Brown described the perpetrators to the 911'operator and the responding officers. He described both perpetrators as black males, one as having dreadlocks, wearing a black hoodie, armed with gun, and fleeing on foot; the second perpetrator was described as wearing a gray sweatshirt, unknown colored pants, and fleeing on a bicycle. Mr. Brown’s description'of the gunman given to the 911 operator was accurate, except that the hooded sweatshirt defendant was wearing at the time he was arrested had some gray on the front of it and inside the hood. While the defendant had some facial hair when arrested, the record suggests that it was light. Moreover, there is no indication Mr. Brown described the gunman as clean-shaven.
Mr. Brown immediately identified defendant shortly after the robbery during the show-up identification and he was positive of his -identification of defendant as the robber. Det. Ripp testified that he elected to conduct a show-up identification procedure because the defendant was apprehended so soon after robbery, six blocks away from the incident, and because the defendant matched the description of the suspected robber/gunman. Although no gun was found in defendant’s possession, nor the eighteen dollars and. cell phone taken from Mr. Brown, the testimony establishes that one perpetrator was able to get away, and the defendant disappeared from view during his flight from Det. Morel.
112Mr. Brown’s testimony that he recognized defendant from seeing him around the neighborhood is also substantial factor favoring the reliability of the identification. See State ex rel. W.H., 10-1418, p. 9 (La.App. 4 Cir. 4/6/11), 62 So.3d 839, 846 (“[T]hese inconsistencies .fail to demonstrate sufficient indicia of unreliability to outweigh the fact that, [the witness] and [the- defendant] were familiar with one another.”); State v. Peters, 10-0326, p. 11 (La.App. 4 Cir. 2/16/11), 60 So.3d 672, 679 (“Here, the likelihood of misidentification is not present. There is no question that [the victim] knew her assailant as the appellant lived for many years two houses down from her.”).
Based on our review of . the record in light of the applicable standard of review and jurisprudence, we find the evidence *639 presented by the State was sufficient for the jury to conclude beyond a reasonable doubt that the defendant' committed first degree robbery of Mr. Brown. Thus, we find no merit to this assignment of error.
ASSIGNMENT OF ERROR NUMBER 2
In his second assignment of error, defendant argues that the trial court erred in excluding expert testimony on eyewitness identification. Defendant filed a written pretrial motion, and memorandum in support of, to permit him to present an “eyewitness expert,” citing the Fifth and Sixth Amendments to the United States Constitution, “the Louisiana Constitution,” and La. C.E. arts. 403 and 702. On the first day of trial, the trial court noted it had reviewed and considered defendant’s motion and denied defendant’s motion to introduce expert testimony on eyewitness identification.
| ^Defendant acknowledges that Louisiana does not permit expert testimony on the issue of eyewitness identification, citing State v. Young, 09-1177 (La.4/5/10), 35 So.3d 1042, as thé controlling case on the issue. The recent concurrences of Justice Clark and Justice Crichton in the Court’s writ denial in State v. Lee, 15-0899 (La.6/19/15), 169 So.3d 350, refer to the continuing viability of the Court’s holding in Young, all resting upon the court’s 1982 seminal decision on the matter, State v. Stucke, 419 So.2d 939 (La.1982).
Defendant attempts to distinguish Young from the present case on its facts. Defendant notes, in Young, a witness to the robbery identified the defendant from a photographic lineup shortly after the robbery and the victim did so two weeks later; whereas in the present case, there was a one-on-óne show-up identification procedure. However, defendant made no such argument in his trial court memorandum or at the time the trial court denied the motion to present the expert testimony. In his pretrial motion and memorandum seeking to present such expert testimony, defendant' asserted he wanted to present expert testimony that will help the jury understand certain factors that have proven to affect the reliability of eyewitness identifications.
In Young, the Louisiana Supreme Court found that the trial coúrt erred in allowing the introduction of testimony by the defendant’s proffered expert in the field of eyewitness identification; describing it as “proposed testimony on the general factors contributing to a . misidentification,” Young, 09-1177, p. 1, 35. So.3d at 1043. The Court found that the testimony did not satisfy the standard for admission of expert testimony articulated under La. C.E. art. 702[3] because it “will|14not aid the jury in its deliberations and, instead, is inclined to be more prejudicial than probative in value:” Young, 09-1177, p. 2, 35 So.3d at 1043.
From our review of this case, it is clear that the type of expert testimony defendant wished to present was the same type of testimony on “factors” affecting the reliability of eyewitness identification as was at issue in Young. Therefore, in light of the Louisiana Supreme Court’s decision in Young, we find the trial court properly denied defendant’s motion; to introduce expert testimony on eyewitness identifications.
*640 As for defendant’s argument on appeal that barring him from presenting such evidence denied him his right to present a defense, defendant did not raise that argument in either his pretrial motion and memorandum or at the time the trial court ruled on that motion.;. However, he did state in the general opening paragraph of his pretrial motion and memorandum that he was. moving for the. admission of the expert testimony “pursuant to the Fifth and Sixth Amendments to the United States Constitution, Louisiana Constitution.” Thus, assuming that defendant did preserve for review the issue that the trial court denied him his Sixth Amendment right to present a defense, i.e., his right “to have, compulsory, process, for obtaining witnesses in his favor,” we find this claim is without merit.
The Sixth and Fourteenth Amendments to the United States Constitution and Article 1, § 16 of the Louisiana Constitution guarantee a criminal defendant the meaningful opportunity' to present a complete defense, including the right to | ^compel the attendance of witnesses in his favor.[4] Washington v. Texas, 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019 (1967)(“The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense,.... Just as an accused has the right to confront the prosecution’s witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense.”); Chambers v. Mississippi, 410 U.S. 284, 302, 93 S.Ct. 1038, 1049, 35 L.Ed.2d 297 (1973)(“Few rights are more fundamental than that of an accused to present witnesses in his own defense.”); State v. Dressner, 08-1366, p. 15 (La.7/6/10), 45 So.3d 127, 137-38; State v. Mills, 12-0851, p. 9 (La.App. 4 Cir. 7/3/13), 120 So.3d 802, 808.
A defendant in a criminal case should be allowed to present “reliable” evidence on any relevant matter. State v. Casey, 99-0023, p. 18 (La.1/26/00), 775 So.2d 1022, 1037. The right to present a defense, however, does not require the trial court to permit the introduction of evidence that is irrelevant or has so little probative value that it is substantially outweighed by other legitimate considerations in the administration of justice. State v. Fernandez, 09-1727, p. 14 (La.App. 4 Cir. 10/6/10), 50 So.3d 219, 229. All relevant evidence is admissible, and evidence that is not relevant is not admissible. La. C.E. art. 402. La. C.E. art. 401 defines relevant evidence as “evidence having any tendency to make the existence of any fact that is of consequence tQ the determination of the action more probable or less probable than it would be without the evidence.” Finally, evidence, although relevant, “may be excluded if its probative value is 1substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time.” La. C.E. art. 403.
A trial court’s ruling as to the admissibility of evidence will not be disturbed absent a clear abuse of discretion. State v. Cyrus, 11-1175, p. 20 (La.App. 4 Cir. 7/5/12), 97 So.3d 554, 565, citing State v. Richardson, 97-1995, p. 14 (La.App. 4 Cir. 3/3/99), 729 So.2d 114, 122.
*641 In Young, the Louisiana Supreme Court set forth its reasons for not departing from its 1982 holding in Stucke, supra, stating:
There is still a compelling concern that a potentially persuasive expert testifying as to the generalities of the inaccuracies and unreliability of eyewitness observations, that are already within a juror’s common knowledge and experience, will greatly influence the jury more than the evidence presented at trial. By merely being labeled as a specialist in eyewitness identifications, an expert has the broad ability to mislead á jury through the - “education” process into believing a certain factor in an eyewitness identification makes that identification less reliable' than it truly is. Moreover, expert testimony on eyewitness identifications can be more prejudicial than probative because it focuses on the things that produce error without reference to those factors that improve the accuracy of identifications. The expert testimony presumes a misidentification, in the absence of presenting factors which support the validity of the identification. This fosters a disbelief of eyewitnesses by jurors.
This Court has long been reluctant to allow experts to offer opinions on the credibility of another witness for fear of the expert invading what is considered the exclusive province of the jury. Moreover, the concept of promoting battles of experts over whether the testimony of every witness is truthful and reliable is not desirable.' These considerations are especially compelling in cases involving eyewitness identifications where any ■ alleged deficiencies could easily be highlighted through ef-■feetive cross-examination and artfully crafted jury instructions. (Citations omitted).
Young, 09-1177, p. 12-13, 35 So.3d at 1050.
117In light of the current Louisiana jurisprudence on this issue, we find no error in the trial court’s judgment denying the defendant’s pretrial motion to permit expert testimony on eyewitness identification. We find nd' merit in this assignment of error.
ASSIGNMENT OF ERROR NUMBER 3
In his third assignment of error, defendant .argues that the trial court erred in adjudicating him a second felony habitual offender because the State failed to meet its burden of proving that he had previously been convicted of a proscribed felony offense. We find merit in this assignment of error.
Following this present conviction of defendant for first degree robbery, the Státe filed a habitual offender bill of information charging defendant as a second felony offender, having pleaded guilty in May 2008 to “atterhpted aggravated second degree battery.”[5]' However, as defendant correctly points out, “attempted aggravated second degree battery” is not a valid crime as defined by the Louisiana Criminal Code.
In a previous appeal involving this defendant and the same 2008 "conviction, this Court. held that defendant’s 2008 guilty plea to attempted aggravated second degree battery is invalid and could not serve as' a predicate offense for a charge of possession of a firearm or weapon by a felon under La., R.S. 14:95.1. State v. Lambert, 14-1138, pp. 3-10 (La.App. 4. Cir. 2/25/15), 160 So.3d 1097, 1098-1103.[6] In *642 that case, the State appealed the trial court’s ruling granting defendant’s | ^motion to quash a charge of possession of a firearm or weapon by a felon using as a predicate offense defendant’s 2008 guilty plea to attempted aggravated second degree battery. This Court rejected each of the State’s numerous arguments, that defendant’s 2008 guilty plea was valid and could be used as a predicate offense under La, R.S. 14:95.1. Based upon a thorough review of the relevant Louisiana jurisprudence, this Court held that a guilty plea or conviction to attempted aggravated second degree battery is wholly invalid bécause there is no such cognizable offense under Louisiana law. Lambert, 14-1138, pp. 3-10, 160 So.3d at 1098-1103; see State v. Joshua, 42,766 (La.App. 2 Cir. 1/9/08), 973 So.2d 963; State v. Arita, 01-1512 (La.App. 4 Cir. 2/27/02), 811 So.2d 1146; State v. Nazar, 96-0175. (La.App. 4 Cir. 5/22/96), 675 So.2d .780; State v. Mayeux, 498 So.2d 701 (La.1986). “Whether, the defendant pleaded guilty or was convicted is of no moment. As found in Joshua, Mayeux, Nazar, .and Arita, “what is relevant is that those courts held that attempts to,commit various degrees of battery are “non-crimes” in Louisiana.” Lambert, 14-1138, p. 6, 160 So.3d at 1101.
This Court decided Lambert on February 25, 2015. The following day, February 26, 2015, in. the present case against defendant, the trial court held the hearing on the multiple bill and adjudicated defendant a second felony habitual offender based on the putative prior 2008 guilty plea to attempted aggravated second degree battery. From a review of the transcript of that hearing, the State, the defense, and the trial court were aware of this Court’s decision in Lambert, | 13rendered the prior day. Based upon this Court’s reasoning and holding in Lambert, defense counsel reürged His' motion to 4uash the habitual offender bill that was previously denied by the trial court on January 15, 2015, at defendant’s original sentencing hearing. While noting that the specific issue before the Court in Lambert was whether the guilty plea to attempted aggravated second degree battery could serve as a predicate offense, for a violation of La, R.S. 14:95.1, defense counsel argued that this Court’s decision “reiterated, multiple times, throughout the opinion, that attempted aggravated second degree battery is a non-crime and cannot be used for any purpose.”
Arguing against defendant’s motion to quash the habitual offender bill, the State raised the same argument as rejected by this Court in Lambert. The State argued that defendant signed a Boykin form and knowingly and voluntarily agreed to plead guilty to the charge of attempted aggravated second degree battery. Expressly rejecting that argument in Lambert, this Court stated, “[ajpplying the reasoning of Joshua, Mayeux, Nazar, and Arita, the defendant’s guilty plea to attempted aggravated second degree battery in 2008 was not a valid plea even though .he was *643 ultimately sentenced to time at hard labor.” 14-1138, p. 6, 160 So.3d at 1101.
The State then argued that it had presented evidence and established sufficient proof that defendant pled guilty to a felony for which he served seven and one-half years, and this is analogous or even equivalent to proving a conviction from a foreign jurisdiction. Citing State v. Hamdan, 12-1986 (La.3/19/13), 112 So.3d 812, the State pointed out that in analyzing predicate convictions out of foreign jurisdictions, the trial court is not confined to the |2ncharging instrument and must examine all of the available information in the record in determining whether that foreign crime, if committed in Louisiana, would be a felony. The State argued, by extension of the holding in Ha/mdcm, that the trial court should examine the record of the 2008 case and guilty plea to determine whether there is evidence that defendant committed a crime that constitutes a felony under Louisiana law.
After hearing arguments on defendant’s motion to quash the habitual offender bill, the trial court stated that although it found the 2008 guilty plea to attempted aggravated second degree battery could not be used as á predicate offensé for purposes of La. R.S. 14:95.1, for purposes of a multiple bill, “there is a different issue.” The trial court reasoned that attempted aggravated second degree battery was not a specifically enumerated offense under La. R.S. 14:95.1 and, thus, could not be used as a predicate offense under that statute; whereas under the habitual offender statute, La. R.S. 15:529.1, there is only a requirement that the predicate offense is a felony. Based on the State’s evidence at the hearing, the trial court found that defendant had in fact pled guilty to a felony in 2008, for which he served a sentence, and that alone is sufficient basis for a multiple bill. The trial court then found the State met its burden of proving that defendant was a habitual offender, having been previously convicted of a felony in Louisiana, and adjudicated defendant a second felony offender.
We find the trial court clearly erred in adjudicating defendant a second felony offender. Pursuant to La. R.S. 15:529.1, an habitual offender is “[a]ny person who, after having been convicted within this state of a felony, or who, after having been convicted under the laws of any other state or of the United States, or 12iany foreign government of a crime which, if committed in this state would be a felony, thereafter commits any subsequent felony within.this state.” In this case, the State did not prove that defendant had been convicted within this state of a felony. This Court unequivocally held in Lambert that attempted aggravated second degree battery is a non-crime for which there can be no valid conviction. Whether or not defendant pled guilty or was convicted of attempted aggravated second degree battery in 2008 is of no moment; no such crime exists under Louisiana, law. Attempted aggravated second degree battery is not a felony in this state because it is not a crime in this state. Accordingly, an invalid guilty plea to attempted aggravated second degree battery does not constitute a prior conviction for the purposes of adjudicating a defendant an habitual offender. . . .
The trial court clearly erred in adjudicating defendant a second-felony offender under Louisiana law. Consequently, we vacate defendant’s adjudication and sentence as a second felony offender arid we reinstate the original sentence of twenty years at hard labor, without benefit of parole, probation, or suspension of sentence, imposed for his conviction for first *644 degree robbery.[7]
^ASSIGNMENT OF ERROR NUMBER 4
In his final assignment of error, the defendant argues that both his original and habitual offender sentences are unconstitutionally excessive.[8] In light of our decision vacating defendant’s adjudication and sentence as a second felony offender and reinstating the sentence originally imposed of twenty years at hard labor without benefit of parole, probation, or suspension of sentence, we review only whether the original sentence is unconstitutionally excessive..
Art. I, § 20. of the Louisiana Constitution prohibits excessive sentences. Although a sentence is within the statutory limits, the sentence may still violate a defendant’s constitutional right against excessive punishment. State v. Martin 13-0628, p. 16 (La.App. 4 Cir. 5/28/14), 141 So.3d 933, 943, writ denied, 14-1250 (La.1/23/15), 159 So.3d 1056, citing State v. Every, 09-0721, p. 7 (La.App. 4 Cir. 3/24/10), 35 So.3d 410, 417. However, the penalties provided by the legislature re-fleet the degree to which the criminal con-duet is an. affront to society. Martin, supra, citing State v. Cassimere, 09-1075, p. 5 (La.App. , 4 Cir. 3/17/10), 34 So.3d 954, 958. A sentence is unconstitutionally excessive if it makes no measurable contribution to acceptable goals of punishment, is nothing more than the purposeless imposition of pain and suffering, and is grossly out of proportion to the severity of the crime. State v. Wilson, 12—1765, p. 23 (La.App. 4 Cir. 2/12/14), 138 So.3d 661, 677, quoting State v. Ambeau, 2008-1191, p. 9 (La.App. 4 Cir. 2/11/09), 6 So.3d 215, 221. A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks kqthe sense of justice. State v. Vargas-Alcerreca, 12-1070, p. 25 (La.App. 4 Cir. 10/2/13), 126 So.3d 569, 583, writ denied, 13-2588 (La.4/17/14), 138 So.3d 625.
In reviewing a claim that a sentence is excessive; an appellate court generally, must determine whether the trial judge has adequately complied with the statutory ;guidelines in La.C.Cr.P. art. *645 894.1 and whether the sentence is warranted under the facts established by the record. State v. Jones, 12-0891, p. 39 (La.App. 4 Cir. 8/7/13), 122 So.3d 1065, 1087, citing State v. Wiltz, 08-1441, p. 10 (La.App. 4 Cir. 12/16/09) 28 So.3d 554, 561. If adequate compliance with La.C.Cr.P. art. 894.1 is found, the reviewing court must determine whether the sentence imposed is too severe in light of the particular defendant and the circumstances of the case, keeping in mind that maximum sentences should be reserved for the most egregious offenders. Jones, supra, citing State v. Bell, 09-0588, p. 4 (La.App. 4 Cir. 10/14/09), 23 So.3d 981, 984.
However, even where there has not been full compliance with La. C.Cr.P. art. 894.1, resentencing is unnecessary where the record shows an adequate factual basis for the sentence imposed. State v. Santos-Castro, 12-0568, p. 30 (La.App. 4 Cir. 7/31/13), 120 So.3d 933, 951, citing State v. Stukes, 08-1217, p. 25 (La.App. 4 Cir. 9/9/09), 19 So.3d 1233, 1250. Further, La.C.Cr.P. art. 881.4(D) expressly states that an “appellate court shall not set aside a sentence for excessiveness if the record supports the sentence imposed.”
In this case, the defendant was convicted of first degree robbery and originally sentenced to twenty years at hard labor, without benefit of parole, probation, or suspension of sentence. La. R.S. 14:64.1(B) provides that the ^sentencing range for first degree robbery is imprisonment at hard labor for not less than three nor more than forty years. Thus, .defendant’s sentence is in the mid-range of possible sentences.
The defendant argues that the robbery “was not the worst kind of first degree robbery.” First degree robbery is committed “by use of force or intimidation, when the offender leads the victim to reasonably believe he is armed with a dangerous weapon.” La. R.S. 14:64.1(A). Here, Mr. Brown’s testimony established that the defendant’s actions led him to, believe that defendant would shoot and potentially kill him with the handgun which defendant pointed directly at Mr. Brown.
Next, defendant argues that his 2008 guilty plea for the non-crime of attempted aggravated second degree battery cannot be considered as a prior felony for sentencing purposes. While we agree, as discussed previously, that his conviction for that' non-crime cannot be used as a predicate offense for the purposes of a habitual offender adjudication, defendant’s previous arrests can be considered by a trial court when sentencing an offender. See State v. Thompson, 02-0333, p. 10 (La.4/9/03), 842 So.2d 330, 338 (no merit to defendant’s claim that maximum penalty of twenty years as second-felony offender was excessive, where trial court expressly took into account the defendant’s prior twenty-three felony and six misdemeanor arrests, in addition to one prior conviction for possession of cocaine); State v. Celestain, 2013-1262, p. 19 (La.App. 4 Cir. 7/30/14), 146 So.3d 874, 885 (in sentencing the defendant the trial court considered that he had previous arrests for battery, disturbing the peace, criminal trespass, and public drunkenness, and had been referred to a diversionary program for a 1996 arrest for possession of cocaine); State v. Ballett, 98-2568, p. 25 (La.App. 4 Cir. 3/15/00), 756 So.2d 587, 602 (“The trial court is entitled to consider the defendant’s entire criminal history in determining the appropriate sentence to be imposed.”). '
Our review of the record reveals the following. The defendant was charged by bill of information on January 9, 2006, with attempted second degree murder in connection with a March 2005 killing. On May 14, 2008, in a plea bargain down from *646 the charge of attempted second degree murder, the defendant purported to knowingly and intelligently plead guilty to the non-crime of attempted second degree aggravated battery. In' the four-count bill of information in the'present case, in addition to the armed robbery charge for which he was tried and found guilty of the lesser crime of first degree robbery, the defendant was also charged with intentional or negligent discharge of a firearm where it was foreseeable that it might result in death or .great bodily harm to a human being, while committing a crime of violence. Finally, he was also charged in the same original bill of information with aggravated assault with a firearm.[9]
In State v. Johnson, 11-375 (La.App. 5 Cir. 12/28/11), 83 So.3d 1116, the defendant was convicted of three counts of first degree robbery for two home invasions and sentenced to thirty years at hard labor on each count, with two counts running consecutively, for an effective sentence of sixty years. The appellate court affirmed the sentences, finding that they were not unconstitutionally excessive. The defendant’s mother testified at his sentencing hearing that at the time of the offenses the defendant was a freshman in college on a football scholarship, was a good kid, and had never been arrested before. His UfiPastor testified that the defendant had been a member of his church for fourteen years; that he had .a full football, scholarship to the University of Arkansas, Monticello; and that he had a. good reputation and was recognized in the community, for his athletic accomplishments in football. It was undisputed that defendant was a first offender. When the suspect’s vehicle was later searched, the police found a .357 Magnum replica pellet handgun inside believed to have been used in the robberies, along with C02 cartridges and pellets. In sentencing the defendant, the trial court stressed that it was no comfort to- the three victims that the gun turned out to be a pellet gun.
In State v. Mitchell, 35,970 (La.App. 2 Cir. 5/8/02), 818 So.2d 807, the appellate court rejected the defendant’s claim of excessive sentence as to a thirty-year sentence for first degree robbery, even though the defendant was a youthful first-felony offender. The defendant had enlisted the aid of three juveniles to commit the crime. During the commission of the crime the defendant repeatedly threatened to kill a female victim, putting a cocked gun to her head at one point, and she and the other victim were in “grave apprehension of death.”
In State v. Washington, 05-210 (La.App. 5 Cir. 10/12/05), 917 .So.2d 488, the appellate court held that the defendant’s sentence of eighteen years at hard labor for first-degree robbery was not constitutionally excessive, where the defendant had no prior convictions and a history of mild mental retardation and depression, and where the victim had not been harmed or touched.
In this case, the trial court referred to the victim’s testimony that the defendant pointed a gun at him and took cognizance of the impact the event had on the victim. At the beginning of his testimony, Mr-., Brown stated that he was ^nervous and tentative about - even testifying. Mr. Brown testified that, at the time of- the robbery, he feai’ed for his life and was terrified, not knowing whether the defendant was going to pull the trigger, shoot and kill him. .
Upon our review of this record, in consideration of the relevant factors, law, and jurisprudence, we find no merit to defen *647 dant’s claim that the twenty-year sentence, without parole probation or suspension of sentence, originally imposed and herein reinstated is constitutionally excessive.
CONCLUSION
For the reasons stated above, we hereby affirm defendant’s conviction for first degree robbery, vacate the adjudication and sentence of defendant as a second felony offender, and reinstate the original sentence of twenty years at hard labor, without benefit of parole, probation, or suspension of sentence.
AFFIRMED IN PART, VACATED IN PART, ORIGINAL SENTENCE REINSTATED.

. The State charged defendant in a four count bill of information with (count 1) illegal use of weapons by discharging a firearm while committing a crime of violence,' La. R.S... 14:95; (count 2) aggravated assault with a firearm, La. R.S. 14:37.4; (count 3) felon in possession of a firearm; La. R.S. 14:95.1; and (count 4) armed robbery with a firearm, La, R.S. 14:64.3. The trial court granted defendant’s motion to sever Count 4 for armed robbery with a firearm. The State sought supervisory review of the trial court’s ruling on the motion to sever and this Court denied the State’s writ. State v. Lambert, unpub., 2014-0820 (La.App. 4 Cir. 9/12/14), writ denied, 2014-1952 (La.9/18/14), 148 So.3d 939. The State then proceeded to trial against defendant on the armed robbery count.

. An errors patent review by this Court revealed an error in the trial court's imposition of sentence of defendant as- a second felony offender. In imposing that sentence, the trial court erred by failing to include the prohibition that the sentence be served without the benefit of parole, probation, or suspension of sentence, as provided for by La. R.S. "14:64.1 and La. R.S. 15:529.1(A)(2)(a) and (G). See State v. Fields, 12tQ674, p. 4, n. 3 (La.App. 4 Cir. 6/19/13), 120 So.3d 309, 314. However, this error is rendered moot by this Court’s decision vacating the adjudication and sentence imposed on defendant as a second felony offender.

. La. C.E. art. 702 states:
If scientific, technical, or other specialized knowledge will assist the trier of fact' to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

. The Sixth Amendment to the U.S. Constitution provides, in pertinent part: "In all criminal prosecutions, the accused shall enjoy the right ... to have compulsory process for obtaining witnesses, in his favor, ...”
La. Const, art. 1, § 16 provides, in pertinent part: "An accused is entitled ... to compel the attendance of witnesses, to present a defense, _”

. On that plea of guilty, defendant was sentenced to seven and'one half years at hard labor — a sentence he had completed at the time he allegedly committed the instant offense.

. In that previous -appeal, the State appealed the trial- court’s ruling granting defendant’s *642 motion to quash the charge of possession of a firearm by a felon in which the State used defendant’s 2008 guilty plea to attempted aggravated second degree battery as a predicate offense. Based on the finding that the predicate 2008 felony conviction was based on a non-crime and, therefore, invalid. As noted previously, supra n. 1, defendant was originally charged in a four count bill of information and Count 4, the subject of the present appeal, was severed from the other charges. Count 3 of the bill of information charged defendant with possession of a firearm or weapon by ;a felon, in violation of La, R.S. 14:95.1, with the predicate offense listed as the 2008 conviction for attempted second degree battery.- Defendant filed a motion to quash Count 3 which the trial court granted. The State appealed.

. Where the. record on appeal fails to establish that the State has met its burden of proof under La. R.S. 15:529.1 at the habitual offender hearing, this Court’s procedure has been to vacate the habitual offender adjudication and sentence and reinstate the original sentence. See State v. Cureaux, 2012-0335, p. 17 (La.App. 4 Cir. 5/1/13), 116 So.3d 833, 842 (no habitual offender bill of information in record; habitual offender adjudication and sentence vacated, original sentence reinstated); State v. Pierce, 2011-0095, p. 12 (La.App. 4 Cir. 8/31/11), 89 So.3d 1, 15, on rehearing, (documents introduced at habitual offender hearing missing from record on appeal; habitual offender adjudication and sentence vacated, original sentence reinstated); State v. Vincent, unpub., 2009-0747 (La.App. 4 Cir. 10/21/09), 24 So.3d 1037 (Table) (text-2009 WL 8677727) (State concedes on appeal that it presented insufficient proof at habitual offender hearing to establish that ten-year cleansing period had not elapsed; "For the foregoing reasons, the adjudication of Virtis Vincent as a multiple offender and the accompanying five year sentence are hereby vacated, and the original' sentence of three years is reinstated."); State v. Picot, 96-2387, p. 7-8 (La.App. 4 Cir. 7/1/98), 718 So.2d 517, 521 (State concedes on appeal that it failed to prove defendant’s identity as the person previously convicted; habitual offehder adjudication and sentence vacated, original sentence reinstated).

. The defendant filed a written motion to reconsider the original sentence at the January 15, 2015 sentencing hearing, which was denied in open-court that date. We note, however, that the record does not reflect that the defendant filed a written motion to reconsider the habitual offender sentence or orally objected to it at the February 26, 2015 habitual offender hearing and sentencing.

. See supra n. 1.